237 A.2d 551.

WILLIAM J. SMITH *et al. vs.* ZONING BOARD OF REVIEW
OF THE CITY OF WARWICK.

JANUARY 25, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The petitioners filed an application with the zoning board of review of the city of Warwick seeking a special exception under sections 14.2.3 and 6.2 of the Warwick zoning ordinance for permission to construct a gasoline service station on a parcel of land owned by them and located in a general business zone. After a hearing, at which

witnesses for and against the application testified, the board filed a written decision denying the application. The petitioners thereupon brought this petition for certiorari to review the board's action, and pursuant to the writ the pertinent records have been certified to this court.

Insofar as relevant here the facts are as follows. The petitioners' land is located at 2076 Warwick avenue, at the northeasterly corner of Warwick and Church avenues. It has a frontage of 210 feet on Warwick avenue, a depth of approximately 188 feet and an area of 32,732 square feet. The area in which the land is located is zoned general business for a depth of 150 feet from Warwick avenue, but a small triangular piece at the rear of petitioners' land is in a residence district designated as Residence A 10, which abuts the 150-foot depth of the general business zone. According to the testimony, petitioners were not asking permission to use any part of the land in the Residence A 10 district for the proposed use. The application specifies that the proposed structure would be entirely within the general business zone. The property is not devoted to any of the permitted commercial uses; it contains only a one-family dwelling, which would be razed if the proposed use were granted.

Warwick avenue is a local but main artery, leading north and south. The 150-foot depth of general business zone abuts a residential zone to the east and west, where the residential development is fairly dense. The typical development on Warwick avenue is roadside business and residential development, the latter thereon being relatively old. Across Warwick avenue, diagonally to the north from petitioners' premises, is a gasoline service station, and within a mile, north and south, there are approximately eight such stations. With the exception of an apartment house, according to evidence presented by petitioners, virtually all new construction on Warwick avenue has been in line with roadside business.

In their application petitioners specify that they seek relief under secs. 14.2.3 and 6.2 of the ordinance. Section 6.2 deals with uses permitted with special conditions. Section 14.2.3 empowers the board to grant special exceptions as follows:

> "* * * In appropriate cases and subject to appropriate conditions and safeguards to make special exceptions to the terms of this ordinance where the exception is reasonably necessary for the convenience and welfare of the public."

This vests a broad grant of discretionary power in the board, but, as the court said in *Richardson* v. *Zoning Board of Review*, 101 R. I. 194, 221 A.2d 460 at 463-64:

> "* * * The authority of the zoning board to grant this exception, however, is not free and unfettered. Evidence must be presented that certain other standards contained in §45-24-13 are satisfied. They are that the exception is in harmony with the general purpose and intent of the ordinance and it is reasonably necessary for the public convenience. * * *"

With these standards in mind, we address ourselves to the evidence in the case at bar.

The petitioners presented three witnesses at the hearing before the board. The first witness was a representative of the Gulf Oil Corporation, which had made arrangements to purchase the property if the board granted the application. He described the plans for the proposed service station facility.

The second witness was Peter A. Laudati, Jr., a qualified real estate expert. After describing the general character of the area he testified in substance that a service station use is probably the most desirable use in a roadside business zone; that along a main local artery like Warwick avenue, gasoline service stations predominate over other commercial uses because the economic demand in such an area is greatest for service station facilities; and that where commercial zoning along such a highway abuts a residential

zone, the service station use, as compared with other permitted commercial uses, is more beneficial for the adjacent residential neighborhood because it would draw the least number of strangers into the neighborhood. Additionally he stated that in his opinion the proposed use would be in harmony with the character of the neighborhood, would serve the public convenience and necessity, and would not adversely affect surrounding residential properties.

The petitioners' third witness was Roe B. Hendrick, a qualified traffic engineering consultant. He testified with respect to the vehicular traffic effects of the proposed use and stated that, from the viewpoint of traffic engineering, the proposed layout was good, beneficial and safe; that because of the type of traffic control at the intersection of Warwick and Church avenues, he did not envision that any traffic congestion would be generated by the proposed use; and that, based upon the premise that a gasoline service station draws its patronage from traffic presently using the highway, the traffic impact resulting from the granting of the application would be less than that which would result from one of the permitted commercial uses which would be expected to attract additional traffic into the area. Mr. Hendrick also testified that visibility in all directions was more than adequate.

Three neighboring property owners appeared in opposition to the application. Mr. Robert J. Watson, whose property is located on Church avenue, based his objections on the grounds that the proposed use would have "* * * a very adverse effect on the abutting property owners of which I am one"; that it would create a traffic problem; and that the area was "saturated" with gasoline stations, there being nineteen between Sandy Lane and Narragansett Parkway, a distance of 2.5 miles. Mr. George H. Rogers, who lives across the street on Church avenue, objected on the ground that he felt the proposed use would decrease the value of his property. And the third objector, Albert Mamoorian,

who said he operated a service station in the vicinity, objected for competitive reasons. He stated that there were too many on Warwick avenue and he saw no reason why there should be another in the area.

The board's decision denying the application contains the following findings: In finding No. 1 the board states that it is aware of the planned extension of Route 37 from Interstate Route 95 to Warwick avenue at a point south of Hoxsie four corners and north of Church avenue; that in its opinion the projected extension will have the effect of changing Church avenue from a "collector" road to a major artery; that traffic will flow from Interstate 95 over Route 37 to Warwick avenue, south on Warwick avenue to Church avenue; and that at that point traffic to all points eastward would probably take Church avenue instead of West Shore Road as at present.

In finding No. 2 the board points out that Warwick avenue curves to the east and has an incline as one approaches Church avenue from the north; that contrary to the traffic expert's opinion it is evident from a view of the area, that visibility in all directions is not adequate, particularly for traffic headed south on Warwick avenue; and that this visibility factor will be aggravated when the increased traffic mentioned above is added to the area.

In finding No. 3 the board states that in its opinion, considering the permitted uses for the parcel in question, a gasoline service station has more of an adverse impact upon surrounding residential property than the permitted uses; that a drive-in is not a permitted use in this zone; and because a gasoline station has certain characteristics which the other uses do not have, it could not agree with the real estate expert's testimony that a gas station has no more impact upon surrounding residential property than permitted general uses. The board also stated that it had been its experience in the past that gas stations as opposed to general business uses had adversely affected surrounding resi-

dential development and that it saw nothing about this particular gas station which would make the result different.

In finding No. 4 the board points out that there has been a proliferation of gasoline stations in the area and that further encroachment of gasoline service station uses will tend to destroy the planned nature of the area and violate the spirit and intent of the ordinance.

On the basis of the above findings the board concluded that petitioners had not shown the proposed exception to be reasonably necessary for the convenience and welfare of the public and therefore denied the application.

It is clear from the board's decision that it was not impressed by the opinion testimony of petitioners' experts and that, in reaching its ultimate finding, it expressly rejected such evidence and relied on its own knowledge of the area in question.

The petitioners contend that in denying their application the board acted arbitrarily and abused its discretion because there is no competent evidence in the record in opposition to or contradictory to the testimony presented by their expert witnesses establishing their entitlement to the special exception sought. Additionally they argue that the reasons given by the board are invalid bases for the denial of an exception. The petitioners rely to a great extent on our decisions in *Center Realty Corp.* v. *Zoning Board of Review,* 96 R. I. 76, 189 A.2d 347, and *Goldstein* v. *Zoning Board of Review,* 101 R. I. 728, 227 A.2d 195.

As we have just pointed out, it appears from the board's decision that it was acting on the basis of its own knowledge of the area, resulting from familiarity therewith as well as from the view it took thereof. It expressly rejected the testimony of petitioners' real estate expert on the question of the effect of the proposed use on neighboring property and expressly disagreed with their traffic expert with respect to the effect of such use on traffic problems. It found that a

gasoline service station in that area would have more of an adverse effect upon surrounding residential property than the permitted uses; that contrary to the traffic expert's opinion it was evident from a view of the area that visibility in all directions was not adequate, particularly for traffic headed south on Warwick avenue; that this visibility factor would be aggravated when the increased traffic resulting from the planned extension of Route 37 was added; and that the area in question was saturated with gasoline stations.

We consider first petitioners' contention that there is no competent evidence in the record negating the testimony of petitioners' expert witnesses. We agree that the testimony of the neighboring property owners on the question of the effect of the proposed use on neighboring property values and traffic conditions has no probative force, inasmuch as these were lay judgments. *Thomson Methodist Church* v. *Zoning Board of Review*, 99 R. I. 675, 682, 210 A.2d 138, 142; *Goldstein* v. *Zoning Board of Review*, 101 R. I. 728, 732, 227 A.2d 195, 198. Nor does the testimony of the operator of the gasoline station across the road have any relevance. Zoning legislation is not intended as a means to controlling competition in an area. *Richardson* v. *Zoning Board of Review*, 101 R. I. 194, 200, 221 A.2d 460, 465.

We come now to petitioners' contention that there is no competent evidence in the record to support the board's findings. As we have stated previously the board indicated in its decision that it made its findings and reached its decision in reliance upon its own knowledge of traffic conditions and highway patterns in the vicinity of petitioners' premises, as well as upon its own knowledge of the proliferation of gasoline stations in that area. This case is governed by our decision in *Monforte* v. *Zoning Board of Review*, 93 R. I. 447, 449, 176 A.2d 726, 727-728, where we said:

"* * * it is abundantly clear that the board reached its decision and its findings in reliance upon its own

knowledge as to the highway pattern existing in the vicinity of petitioner's property and the volume of traffic using those highways. It is the well-settled law in this state that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance. Where it appears from the record that a decision was reached in reliance upon such knowledge, it is considered by this court to constitute legal evidence sufficient to support such a finding. * * *''

See also *Goldstein* v. *Zoning Board of Review, supra,* at 199 (dicta), where the court said:

"This is not to say, however, that affirmative relief must necessarily be granted where an applicant for a special exception has made out a prima facie case and remonstrants fail to appear, or, appearing, fail to offer competent evidence. The board may take into consideration probative factors within their knowledge in denying the relief sought and their decision will not be disturbed if disclosed therein are the conditions by which they were motivated. * * * Further, if possessing no such knowledge the board may subsequently acquire it by taking a view and relating their resulting observations to the evidence adduced by the applicant in the reasons for their decision. If the observations thus set forth are probative a decision denying the application will not be arbitrary nor disturbed by us. * * *''

In the circumstances of this case we are not required to pass upon whether there is in the record additional legal evidence to support the board's findings. *Monforte, supra,* at 449, 176 A.2d at 727.

Unlike the case at bar, the record in *Center Realty Corp., supra,* and *Goldstein, supra,* failed to indicate that the board denied the application before it on the basis of its own knowledge or on the basis of knowledge acquired by it from a view of the premises in question. In those cases, therefore, there was no evidence that the grant of the exception sought would adversely affect the public interest.

On the view we take the board gave sufficient reasons to support its decision. Having found that the petitioners had not sustained the burden of showing that the proposed exception was reasonably necessary for the convenience and welfare of the public, the board did not have the authority to act affirmatively upon the petitioners' application. *Monforte, supra,* at 451-52, 176 A.2d 729.

The petition for certiorari is denied and dismissed, the decision of the respondent board is affirmed, and the records which have been certified to this court are ordered sent back to the respondent board.

*Roberts & McMahon, William F. McMahon,* for petitioners.

*Howard R. Haronian,* City Solicitor, *Gordon C. Mulligan,* Assistant City Solicitor, for respondent.