DECISION
This is an appeal from a decision of the Providence Zoning Board (Board). Ten citizens (plaintiffs) who reside in the neighborhood of 99 Hillside Avenue, Providence, Rhode Island, where the Jewish Home for the Aged (Jewish Home) is located, appeal the Board's June 13, 1996 decision granting defendant Hillside Health Center Associates, L.P.'s (Hillside) request for variances. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
Facts/Travel
In April, 1995, Hillside filed an application with the Board pursuant to Section 902 of the Providence Zoning Ordinance (Ordinance) requesting permission to be relieved from Sections 200, 303(15.3), 704.2(A,B) and 705.6(D) of the Ordinance. Hillside sought to expand the Jewish Home which had previously functioned as a nursing facility. Specifically, Hillside sought to increase the intensity of the use of the facility by increasing the maximum number of residents and by creating additional parking spaces. As a result, Hillside sought relief from the regulations governing the expansion of a non-conforming use, front and side-yard paving limitations, and landscaping.
The Jewish Home ceased operating as a nursing facility in 1993 when the owner of the facility, a non-profit corporation called The Jewish Home for the Aged (JHARI), voted to close the facility as a result of substantial financial losses it was incurring. See, Ruth Meyer v. Jewish Home For The Aged of RhodeIsland, C.A. No. 93-5374, Decision at 6. (R.I. filed Jan. 19, 1994).[1] On October 18, 1993, JHARI entered into a conditional sales agreement to sell the Jewish Home to Hillside, and subsequently, Hillside applied to the Department of Health to transfer ownership of the home and its license. (Tr. at 23.) The license is on a "hold" status pending the sale of the Jewish Home and the Department of Health's approval of the transfer of the license to Hillside.
On April 20, 1996, the Board held a public hearing on Hillside's proposal to increase the existing 254 bed facility to a 275 bed facility. Specifically, Hillside requested 236 beds in the main structure and 39 assisted living units in the annex building. Hillside presented four expert witnesses at the hearing. Hillside's Chief Financial Officer, John Montecalvo (Montecalvo), a licensed nursing home administrator for ten years and a manager of approximately 900 nursing home beds in Rhode Island, testified regarding the need for the increased intensity in use. Montecalvo testified that, "in order [for the project] to be affordable under the current reimbursing and Department of Health regulations, it's necessary for us to have an optimum number of beds to support what the costs are for the facility." (Tr. at 18.) Montecalvo further testified that he had conducted a financial analysis of the project by "running all the numbers for a 200 bed up to a 250 bed." (Tr. at 18.) In addition, Montecalvo testified that the main facility would operate at a loss if it operated with less than 236 beds, and he testified that the main facility would lose several hundred thousand dollars per year if it operated with 200 beds. (Tr. at 18.)
In regard to the annex building, Montecalvo testified that he began his financial analysis at 18 beds and ended at 45 beds and he testified that the annex building would generate a reasonable return of six to eight percent if it operated with 39 beds given the renovations that needed to be completed and given the type of care that assisted living requires. Moreover, he testified that the annex building would lose approximately $140,000 on an annualized basis if it operated with 18 beds. Finally, Montecalvo testified that the proposal to utilize one building for assisted living and one for a nursing facility was the result of the unique circumstances and age of the two buildings.
Gene Mancino (Mancino), of Mancino Associates Architects, an expert in architecture, testified that there was "no other elderly care design or use" for the annex building. (Tr. at 15.) Jim Cronan, (Cronan) a professional Engineer and expert in the area of parking and traffic design issues, testified that the expansion of parking was sufficient to service the use of the facility. James Sloan (Sloan), a real estate expert, testified that in their present conditions, the buildings are functionally obsolete as either a nursing or an assisted living facility. Sloan further testified that because the building's only feasible use is as a nursing or assisted living facility that the Board's denial would constitute a serious hardship and the loss of all beneficial use of the property. Finally, Sloan testified that the relief requested was the least amount necessary and that the proposal would not have a negative impact on the surrounding property values.
Approximately seven citizens (objectors) testified in opposition to the project. The objectors testified that increasing the number of beds in the Jewish Home would increase existing traffic, parking, noise, and pollution problems associated with the operation of the Jewish Home. State Representative Gordon D. Fox, Councilman Kevin Jackson, and State Senator Rhoda Perry all expressed their opposition to the plan.
At the end of the hearing, the Board voted to continue its decision for a month in order to "go back and re-look at the property" and to consider the objections raised by the residents. (Tr. at 54.) On June 25, 1996, the Board granted the variance request subject to fourteen restrictions which it placed on the operation of the facility. On July 2, 1996, the appellants filed a timely appeal with this Court.
The appellants contend that Hillside failed to establish that "it was denied all beneficial use of the property and that granting a the [sic] variance is necessary to avoid indirect confiscation of the property." Further, appellants assert that Montecalvo was an interested party whose testimony was not supported by financial statements or cost data. Appellants also contend that the hardship from which Hillside sought relief was the result of Hillside's "prior action" of entering into a conditional sales agreement with JHARI in violation of G.L. 1956 § 45-24-41.
Alternatively, Hillside contends that Montecalvo's testimony was consistent with the trial justice's decision in Meyers not to enjoin the closure and sale of the Jewish Home. In addition, Hillside contends that the appellants cannot rely upon material outside the certified record as support for their appeal. Finally, Hillside argues that the hardship from which it seeks relief was not self-created because the hardship pre-existed in the inability of the 254-bed facility to operate without sustaining losses.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 "(D) The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inference, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of the zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence.Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc. 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n. Inc. v. George, 648 A.2d 370 (R.I. 1994) (citingTown of Narragansett v. International Association of FireFighters, AFL-CIO. Local 1589, 119 R.I. 506, 380 A.2d 521 (1977).
Variances
In the instant matter, Hillside sought both a variance to increase the intensity of the existing nonconforming use of the Jewish Home and a dimensional variance from the regulations regarding front and side-yard paving limitations, parking, and landscaping. As a result, Hillside had the burden of proving under G.L. 1956 § 45-24-46(C)
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land and not to the denial of the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting hereto those physical disabilities addressed in § 45-24-30(16) herein;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
In seeking a use variance Hillside had the additional burden of proving the Jewish Home could not yield any beneficial use if it was required to conform to the provisions of the zoning ordinance. Moreover, in order to prevail in their request for a dimensional variance, Hillside had the burden of proving that they would suffer a hardship amounting to more than a mere inconvenience if the Board denied their request for a variance. The mere fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. G.L. (1956) § 45-24-46(D)(2).
In considering a request for a use variance, the Board must determine whether denial of the request would deprive the owners of all beneficial use of their property so as to amount to confiscation of the property. Rozes v. Smith, 120 R.I. 515,388 A.2d 816 (1978). In contrast, in considering a request for a dimensional or viti variance, the Board must determine whether denial of the requested relief would have an adverse impact amounting to more than a mere inconvenience. Bamber v. ZoningBoard of Review, 591 A.2d 1220, 1223 (R.I. 1991).
Hillside contends that they satisfied the standard for a use variance pursuant to Vican v. Zoning Board of Review, in which the Rhode Island Supreme Court noted that a use variance may be granted where there is evidence that the cost of using the property for the permitted use is so prohibitive that it would in effect amount to deprivation of all beneficial use. 103 R.I. 429,238 A.2d 365 (1968). The record reflects that the Board heard testimony that the Jewish Home could not operate at less than 275 beds without incurring substantial economic losses. (Tr. at 17-19.) Further, Sloan testified that due to the "functional obsolescence" of the buildings there is no use for the Jewish Home for purposes other than use as a nursing facility. (Tr. at 34.) With respect to dimensional relief, the record also contains testimony that 44 additional parking spaces are necessary to comply with zoning requirements regarding the number of parking spaces needed to operate a 275 bed facility and that front and side-yard paving limitations and landscaping requirements are necessary to create those additional parking spaces. (Tr. at 4-6.) Consequently, the record reflects that the Board had evidence before it that denial of the use variance would result in the deprivation of all beneficial use of the property and that denial of the requested dimensional variances would amount to more than a mere inconvenience.
The appellants contend, however, that Hillside's evidence with respect to the use variance was not probative because Montecalvo, who testified regarding the economic viability of the Jewish Home, was an interested party. Hillside argues that Montecalvo's testimony was probative in regard to the issue of the financial viability of the facility and that his testimony was consistent with the other experts' testimony. In addressing the issue of the testimony of an interested party, our Supreme Court in Michaud v. Michaud, stated:
 "in such a situation a trier of fact may well be compelled to question the entitlement of such evidence to credence. Where, however, the evidence of a party to the action is not contradicted by direct evidence, nor by any legitimate inferences from the evidence, and it is not opposed to the probabilities; nor, in its nature, surprising, or suspicious, there is no reason for denying to its conclusiveness." 200 A.2d 6, 8 (1964) (quoting Hull v. Littauer, 162 N.Y. 569, 57 N.E. 102 (1900)).
Therefore, even assuming that Montecalvo was an interested party, the Board was not required to disregard his testimony. Furthermore, the objectors and the Board had the opportunity to cross examine Montecalvo to determine bias. In fact, a review of the record indicates that the Board did question Montecalvo regarding his calculations, the project's start-up costs, Hillside's corporate structure, and potential taxpayer liability for the financing of the project in the event of a default. (Tr. at 19-24.) Thus, the Board had an opportunity to cross-examine Montecalvo to determine any bias he might have had.
The appellants further claim that Montecalvo's testimony did not constitute probative evidence because his testimony was not supported by financial statements or cost data. The appellants cite Gaglione v. DiMuro, 478 A.2d 573 (R.I. 1984) for the proposition that statements of economic unfeasibility that are mere conclusions and unsupported by financial statements or cost data do not constitute probative evidence.[2] However, inGaglione, the court did not state that financial statements or written cost data are the only types of evidence considered probative on the issue of economic unfeasibility. Furthermore, in the case at bar, the record reflects that the Board had before itMeyer v. Jewish Home for Aged of Rhode Island, in which a trial justice of this Court denied the plaintiffs' request for an injunction to prevent JHARI from selling the Jewish Home. (Tr. at 7.) In Meyer, the trial justice referenced, in great detail, the financial losses that led to the closing of the Jewish Home. (Record Ex. A.) In addition, Montecalvo testified regarding the cost of acquisition and the cost of making renovations. (Tr. at 21-22). He also testified that the main building is "functionally obsolete" as a nursing facility. (Tr. at 21.) As a result, the record contains probative evidence of a loss of all beneficial use.
The appellant also contends that the requested variance would alter the surrounding neighborhood area. Appellants point to the testimony of the residents who opposed the variance. In Smith v.Zoning Board of Review of the City of Warwick, this Court noted that the lay opinions from neighboring property owners on the question of the effect of a proposed use on neighboring property values and traffic conditions had no probative force.103 R.I. 328, 334, 237 A.2d 551, (1968). In the case at bar, the record reflects that the objectors testified, based on their personal experiences, about the problems with traffic, noise, and pollution which resulted from the Jewish Home being located in a residential neighborhood. However, it is well settled that lay testimony is not probative with regard to traffic issues or property values.
Further the appellants contend that the relief Hillside sought was not the least amount of relief necessary. In support of their assertion, appellants point to correspondence in which Hillside's attorney admitted that the Jewish Home could operate with less than 275 beds. (Ex. 2.) This Court cannot consider evidence outside the certified record. Section 45-24-69 requires the zoning board of review to "file the original documents acted upon by it and constituting the record of the case appealed from or certified copies thereof, together with such other facts as may be pertinent." The certified record before this Court does not contain the correspondence referred to by the appellants.
Finally, the appellants argue is that the relief which Hillside sought is a result of Hillside's entering into a conditional sales agreement to purchase the Jewish Home. Section45-24-41(c)(2) requires that the hardship from which the applicant seeks relief not be the result of any prior action of the applicant or result primarily from the applicant's desire to realize greater financial gain. In determining whether the hardship from which an applicant seeks relief was self-created, our Supreme Court has held that the fact that an owner knew a lot was undersized or otherwise didn't conform to zoning requirements would not provide the basis for a denial of his application for a variance. DeStefano v. Zoning Board of Review, City of Warwick,405 A.2d 1167, 122 R.I. 241 (1979). In the instant matter, the Board had evidence before it that the facility was obsolete and could not function as a nursing facility in its present condition and had been closed as a result of its inability to function without incurring substantial economic losses. Accordingly, the record demonstrates that the hardship from which Hillside sought relief was not self-created. After review of the entire record, this Court finds that the decision of the Board is supported by reliable, probative and substantial evidence, and the appellants' substantial rights have not been prejudiced. Accordingly, the appeal is denied, and the June 13, 1996 decision of the Providence Zoning Board of Review is affirmed.
Counsel shall prepare the appropriate order for entry of judgment.
[1] In Meyers, the plaintiffs sought equitable relief to prevent JHARI from closing the Jewish Home and liquidating their assets by selling the buildings. The trial justice denied relief on the basis that the Home was on the verge of "financial collapse," that it would quickly become insolvent if it continued to operate, and that the plaintiffs had failed to show "waste, fraud, conflict of interest, or bad faith."
[2] The appellants apparently inadvertently cited Doyle v.McNulty which begins on the last page of Gaglione v. DiMuro,478 A.2d 573 (R.I. 1984). As Gaglione supports the appellants' proposition, this Court will refer to Gaglione in this decision.