DECISION
This matter comes before the court pursuant to Rhode Island General Laws § 45-24-69. Plaintiff appeals a decision of the Zoning Board of Appeal of the Town of Portsmouth (Board) denying its application for a special use permit to construct an 11,200 square foot warehouse/storage building as part of a marina operating in a residential district.
For the past fifteen years, the subject property, located on Narragansett Boulevard in Portsmouth, has been used as a marina. Said marina is a nonconforming use located in a residential area. The plaintiff seeks to construct a steel structure on the property for the purpose of stowing boats over the winter as well as a place in which to perform simple maintenance tasks. The area in which plaintiff seeks to build is presently used for boat storage. On September 27, 1996, plaintiff presented its request for a special use permit to the Portsmouth Zoning Board of Review.
Section 45-25-69(D) of the Rhode Island General Laws provides specific guidelines to be followed by the court when reviewing decisions of a zoning board.
 "(D) The Superior Court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) in violation of constitutional statutory or ordinance provisions;
 (2) in excess of the authority granted to the zoning board by statute or ordinance;
 (3) made upon unlawful procedure;
 (4) affected by other error of law;
 (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion." G.L. 1956 (1991 Reenactment).
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the board if he or she conscientiously finds that the decision was supported by substantial evidence. Apostolou v. Genovesi,388 A.2d 821 (1978). "Substantial evidence in this context means such relevant evidence that a reasonable mind might accept as adequate to support the conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. GeorgeSherman sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981). This standard refers to the reasonableness of the action of the zoning board on the basis of the evidence before it. UnitedStates v. Bianchi Co., 373 U.S. 709, 715, 83 S.Ct. 1409, 1414 (1963). On appeal, the Superior Court must not abdicate its traditional function but rather it must scrutinize the record as a whole to determine whether competent evidence exists to support the tribunal's findings. New England Naturist Ass'n, Inc. v.George, 648 A.2d 370, 371 (R.I. 1994).
The purpose of the special use permit in the context of zoning is to establish within the ordinance "conditionally permitted" uses. Nani v. Zoning Board of Review, 104 R.I. 150,242 A.2d 403 (1968). An application for a special permit cannot be granted absent a specific provision in the local ordinance authorizing the proposed use by such special permit. The fact that a particular use is allowed in a zoning district by special permit means that the municipality has already determined that it is an appropriate use for the district and as such, it cannot be excluded by a decision of the zoning board unless the standards for such special permit are not satisfied. Perron v. Zoning Boardof Review of Burrillville, 117 R.I. 571, 369 A.2d 638 (1977). Where the conditions and requirements are satisfied, it is an abuse of discretion to deny the requested special use permit.See, Salve Regina College v. Zoning Board of Review of Newport,594 A.2d 878 (R.I. 1991).
Article VII, section A(4) of the Portsmouth Zoning Ordinance sets forth the criteria which must be satisfied in order to justify the grant of a special use permit. The applicant must establish that
 1. desired use will not be detrimental to the surrounding area; 2. it will be compatible with neighboring land uses; 3. it will not create a nuisance or a hazard; 4. adequate protection is afforded to the surrounding property by the use of open space and planting; 5. safe vehicular access and adequate parking are provided; control of noise, smoke, odors, lighting and any other objectionable feature is provided; 7. solar tights of the abutters is provided for; 8. the proposed special use will be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance of the Town of Portsmouth, 9. the health, safety and welfare of the community is protected.
On September 27, 1996, the board held a heating regarding the marina's request for a special use permit. One of the first witnesses to testify was the marina's manager and vice-president, John Burns. Mr. Burns testified that in order to remain competitive, a manna must provide a facility in which customers can store their boats over the winter. This, he said is the primary purpose of the proposed structure. At present, the boats remain outside during the winter. Because of the variable weather conditions, exposure to the elements can compromise a vessel's integrity.
In addition to storage, the springtime maintenance procedures now performed by employees outside would be performed inside the new structure. These procedures include lightly sanding, buffing and painting the boats after a winter in storage. Mr. Burns assured the board that he had no intention of using heavy machinery in this building or doing any work other than the aforementioned maintenance.
Real estate expert, John Enright, Jr. was qualified as an expert and presented testimony that, in his professional opinion, the approval of the application would have no detrimental effect on any of the neighboring properties. He stated, "I came to the conclusion [that there would be no detrimental effect] for a couple of reasons. One, to affect the values of the adjoining or abutting properties, the site itself would have to be affected. The building that's being put up would have to either block the view of the property owners, the side owners, or there would have to be noise pollution, air pollution, there would have to be some detrimental fact that would reduce the value or the price of these. And this does not appear to be the case." HearingTranscript, September 27, 1996, at 35-36.
The hearing was continued until April 30, 1996 at which time a second real estate expert; James M. Sloan testified that the proposed building would not, in his opinion negatively affect the surrounding property.
 "I think when one considers the fact that the actual use is not any different than that which is taking place out in the open in past years and at the present time, and that the request is essentially nothing more than to request an encapsulating or enclosing of that use, which has taken place and which presumably would continue to take place, and that that would happen in a building that has a roof line and has an existing screening at the present time that is not unlike that which might take place under a residential development scenario, that there would not be an adverse effect on the surrounding property. I think it is compatible for the reason that it will enclose some of the uses that already go on out in the open; and that in this area, which is closest to the residences, it creates a transitional zone in the sense where you would have the typical outside boat activities that takes place in close proximity to the marina and slips, but in the close proximity to the residences, all of those uses would be enclosed.
 For those reasons and all of the reasons stated in the report, I cannot see how it could be incompatible or cause a detrimental effect in the area." Hearing Transcript, April 30, 1996, at 49-50.
In addition to the experts, several of abutting property owners were present at the heating at which time they aired concerns that the building would be an "eyesore;" that property values would decrease; that due to its large size, the building would pose a hazard in the event of a hurricane or flood; and that there would be an increased number of vehicles parking on the streets in the neighborhood because there would not be enough parking in the marina. Several neighbors posed questions to the experts and their concerns were addressed.
Since 1965, our Supreme Court has uniformly held that "the lay judgments of neighboring property owners on the issue of the effect of the proposed use on the neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." Toohey v. Kilday, 415 A.2d 732 citing Smith v. ZoningBoard of Review of Warwick, 103 R.I. 328, 334, 237 A.2d 551, 554 (R.I. 1968); See also Woonsocket Head Start DevelopmentAssociation and Imperial Electric Co., Inc. v. Hoyceanyls, 1999 WL 6669 (R.I. Super. 1999).
After two nights of testimony, the Board's decision consists of less than one and one half paragraphs.
 "The marina in is an R-10 zone. The Board found that the surrounding area is not only residential, but that the residences, which are on both sides of the subject property, are built in such a way that the residential area can be described as compact. Compared to the neighborhood the proposed building is huge. It is not itself a residential type structure. It does not have windows, it does not have a roof pitch. It does not have doors. It does not have a front yard. It is a marine type use.
 The Board concluded that, although the proposal meets most of the requirements for a special use permit, it will not be compatible with neighboring land uses." Decision, dated May 7, 1996.
The Court finds this decision to be woefully inadequate. The hearing spanned two nights and yielded several testimonials. Two experts, separately and individually, addressed all the elements required by the Portsmouth Zoning Ordinance. Yet, the Board's decision makes no mention of this testimony nor does it contain findings of fact or conclusions of law. As the marina indicates, this decision seems to have been made based on aesthetics rather than legal reasoning.
In Light of the competent evidence adduced before the board, it is this Court's decision that the board's denial of the marina's request for a special use permit constituted an abuse of discretion by the board and its findings were clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.
For the foregoing reasons, the board's decision is quashed, and the records are ordered returned to the board with our decision granting the special use permit