DECISION
Before this Court is an appeal from a decision of the Town of Cumberland Zoning Board of Review (Board), which granted Americo Soares (Soares or Applicant) a dimensional variance to construct a two family home on his property. Appellant Daniel Smalley (Appellant) seeks reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69. For the reasons set forth herein, the Court affirms the Board's decision.
 FACTS AND TRAVEL
A detailed recitation of the facts of this case can be found inSmalley v. Cumberland Zoning Bd. of Review, 2006 WL 3059964 (R.I.Super. 2006). The Court will discuss only those pertinent factual developments since remanding the matter to the Board. In its October 26, 2006 remand, this Court found that "the Board's decision in this matter is a recital of the standard of review as it appears in the Town of Cumberland *Page 2 
ordinances and the Rhode Island General Laws, and such recital does not amount to sufficient findings of fact." Id. at 5. The Court directed the Board to make findings of fact in two specific areas. First, the Court called for factual findings "concerning the status of Lot 228 and its alleged merger into Lot 145." Id. The Court thought this important because the Board's decision granting relief was made contingent upon confirmation of whether or not the two lots had been merged, and no evidence had been submitted on that issue. Second, and more significantly, the Court requested specific findings regarding "the particular characteristics of Soares' application [that] led the Board to approve the dimensional variance in accordance with the statutory requirements." Id.
Following the Court's instructions, on March 14, 2007, the Board held a duly noticed public hearing to readdress these issues. At the hearing, the parties and Board agreed that because the Board's composition had changed since the first hearing — two of its five members had not previously voted on the matter but were present as alternates — the application would be reconsidered and a new vote would be taken. (Tr. 6.) The parties and the Board also agreed that rather than hold a completely new hearing, the Board would issue findings of fact after reviewing the transcript of the first hearing. Id. The parties also presented a stipulation that resolved the lot merger issue.[1] After assuring that all five of its members had reviewed the transcript, the Board voted unanimously to approve Soares' request for a dimensional variance. On April 11, 2007, the Board issued a new written decision, which was filed the following day. *Page 3 
 STANDARD OF REVIEW
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section § 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
It is axiomatic that "[t]he Superior Court reviews the decisions of a plan commission or board of review under the `traditional judicial review' standard applicable to administrative agency actions."Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998). When reviewing a zoning board decision, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level."Id. at 665-66 (quoting Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)). The trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that *Page 4 
a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. of Review of North Kingstown, 818 A.2d 685, 690
n. 5 (R.I. 2003) (quoting Caswell v. George Sherman Sand Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981)).
The deference this Court gives to the zoning board's decision and findings is, however, conditional upon the board's providing adequate findings of fact that support its decision. Kaveny v. Town of CumberlandZoning Bd. of Review, 875 A.2d 1, 8 (R.I. 2005). Factual findings, amounting to more than mere conclusory statements or a "recital of a litany," are necessary to accomplish judicial review of a zoning board decision. von Bernuth v. Zoning Bd. of Review of New Shoreham,770 A.2d 396, 401 (R.I. 2001) (quoting Irish P'ship v. Rommel, 518 A.2d 356, 358
(R.I. 1986)). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Bd. ofReview of East Providence, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962). With respect to questions of law, however, this Court conducts a denovo review; consequently, the Court may remand the case for further proceedings or potentially vacate the decision of the Board if it is "clearly erroneous in view of the reliable, probative and substantial evidence of the whole record." von Bernuth, 770 A.2d at 399; seealso G.L. 1956 § 45-29-69(d)(5).
 ANALYSIS
Appellant makes two principal arguments to support his appeal in this case. First, Appellant contends that the written decision issued by the Board after the remand still fails to provide adequate findings of fact sufficient for judicial review. Second, *Page 5 
Appellant argues that the Board's decision to grant the dimensional variance under Article 9, Section 9-8(c) of the Cumberland Zoning Ordinance is not supported by substantial evidence. The Court will address each argument in turn.
 Findings of Fact
Appellant contends that "the board's decision must be reversed because its written decision does not set forth adequate findings of fact in support of its decision." (Appellant's Memo 9.) Appellant adds that the new decision offers "very little in terms of findings of fact" and "cannot be construed as anything other than the recital of a litany."Id. at 10.
Under § 45-24-61(a), the Legislature has required that "[t]he zoning board of review shall include in its decision all findings of facts and conditions. . . ." In addition, our Supreme Court has stated that review of a zoning board decision requires a court to decide
 "whether the board members resolved the evidentiary conflicts, made the prerequisite factual determinations, and applied the proper legal principles. Those findings must, of course, be factual rather than conclusional, and the application of the legal principles must be something more than the recital of a litany. These are the minimal requirements. Unless they are satisfied, a judicial review of a board's work is impossible." Irish Partnership v. Rommel, 518 A.2d 356, 358-59 (R.I. 1986) (quoting MayDay Realty Corp. v. Board of Appeals of Pawtucket, 107 R.I 235, 239, 267 A.2d 400, 403
(1970)).
"[W]hen the board fails to state findings of fact, the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Id.
Here, the Court is satisfied that the Board's second decision, unlike the first, contains factual findings sufficient to facilitate judicial review. While the Board's first *Page 6 
decision contained nothing more than a mere recitation of the legal standard required for the granting of a dimensional variance, and was therefore remanded, the second decision is different. In the second decision, Board Member LeBlanc deliberately applied each of the five prongs of the legal standard contained in Article 9, Section 9-8(c) of the Cumberland Zoning Ordinance to the facts of the case:
 "[T]he hardship from which the applicant seeks relief is due to the unique characteristics of the subject land and not to the general characteristics of the surrounding area, and not due to a physical or economic disability of the applicant; and I think that the record shows that the land as they proposed it subdivided is the least hardship (sic.) required to fit in a house for the son or the daughter, children.
 The second standard: That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain. There was never any mention in the record that he was looking to make greater financial gain. He's looking for a place for his children, his grown children.
 I think there's sufficient evidence in the record that this will not alter the general characteristics of the surrounding area, in that the area is — has many small lots with large homes; and this is a two-family home on a larger lot. The lot is generally larger than the other lots in the area.
 And, that the variance, if not granted, would amount to more than a mere inconvenience; and I believe it would amount to more than a mere inconvenience, in that a nice home for his children at a reasonable price would not be available on that piece of land, which, in my opinion, would constitute more than a mere inconvenience. . . . In asking for 2,174 square feet of relief, I believe that that is the least relief necessary to fit the proposed two-family home on a sufficient lot."
The facts adduced by the Board may have been briefly stated, but they are sufficient to inform the Court of the nature of the evidence upon which the Board decided the issues *Page 7 
and meets the minimal requirement of being "something more than the recital of a litany." Irish Partnership, 518 A.2d at 358-59. Accordingly, the Board's decision is not in violation of statutory provisions.
 Dimensional Variance
The Board's authority to grant a dimensional variance is derived from Article 9, Section 9-8(c) of the Cumberland Zoning Ordinance entitled, Standard of Relief, which states as follows:
 "(1) Variance. In granting a variance, the board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 a. That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area, and not due to a physical or economic disability of the applicant.
 b. That such hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 c. That the granting of the requested variance will not alter the general characteristic of the surrounding area or impair the intent or purpose of this zoning ordinance or the comprehensive plan of the town.
 d. That the relief to be granted is the least relief necessary.
 The board shall, in addition to the above standards, require that evidence be entered into the record of the proceedings showing that in granting a:
 . . . b. Dimensional variance, that the hardship that will be suffered by the owner of the subject property if the dimensional variance is not granted shall amount to more than a mere inconvenience, which shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial *Page 8 
use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
Appellant argues that the Board's decision to grant Applicant's dimensional variance is not supported by substantial evidence in the record. With respect to the first requirement, Appellant asserts that the Applicant's hardship is not due to the unique characteristics of the subject property, but to Applicant's own previous "request to change the zoning designation of his property from industrial to residential." (Appellant's Memo 5.)[2]
It is clear from the record that the Applicant is unable to meet the lot size requirements for a two family home because of the relatively small physical size of the property, rather than from a general characteristic of the surrounding area. At the initial hearing, the Board discussed the fact that the property's square footage is 11,326 sq. ft., approximately 2000 sq. ft. shy of the 13,500 sq. ft required to construct a two family dwelling. (Tr. 6-7.) A review of the record also reveals no evidence that the hardship results from a physical or economic disability of the Applicant. Therefore, this Court is satisfied that the Board's finding that the Applicant's hardship is due to the unique characteristics of his lot rather than from the general characteristics of the surrounding area or the property as zoned is supported by substantial evidence.
The second requirement states that "the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain." Ordinance § 9-8(c)(1)(b). Appellant restates the argument made above that because the Town of Cumberland previously granted Applicant's *Page 9 
request to change the designation of the lot from industrial to residential, that the Applicant's hardship is therefore self-created. As a general rule, a variance will not be granted to relieve an applicant from a self-created hardship. See Sciacca v. Caruso, 769 A.2d 578, 584
(R.I. 2001). Indeed, "[t]he label [of self-created hardship] seems to be most properly employed where one acts in violation of an ordinance and then applies for a variance to relieve the illegality." Id. (quoting 7 Patrick J. Rohan, Zoning and Land Use Controls § 43.02[6] at 43-66 (1998)); see Caccia v. Zoning Bd. of Review, 83 R.I. 146, 113 A.2d 870
(1950) (applicant who deliberately built a dwelling that exceeded the maximum permitted lot coverage could not obtain a variance since his hardship was "wholly self-created and not the result of the ordinance"). A recent example of a self-created hardship situation was presented in Sciacca. There, our Supreme Court applied the self-created hardship provision to a property owner who persuaded a local planning authority to subdivide her property in direct violation of the merger provision of a zoning ordinance and then sought a variance to build on one of the substandard lots. 769 A.2d at 583-585. In contrast, here there is no evidence that the Applicant engaged in an activity that violated a zoning ordinance and then, when charged with a zoning violation, sought a variance to "correct" the illegality. The instant Applicant was lawfully permitted by the Town to change the zoning designation of his property from industrial to residential. Therefore, in seeking a dimensional variance to build a two-family home, the Applicant is not asking the Board to correct a prior self-created illegality. Accordingly, this Court is satisfied that the Board's conclusion that Applicant's hardship was not self-created is supported by substantial evidence in the record. *Page 10 
Appellant also argues that the Applicant's request results primarily from a desire to realize greater financial gain. Specifically, Appellant states that "it seems likely that the lot is more marketable, or more profitable, if it is the site of a two-family dwelling, as opposed to a single family dwelling." (Appellant's Memo 6.) The Board, however, found no evidence that the Applicant's primary motivation was financial. In its decision, the Board stated that there was never "any mention in the record that [the Applicant] was looking to make greater financial gain. He's looking for a place for his children, his grown children." During the original hearing, the Board questioned the Applicant about who would be living in the proposed two-family home and whether it would be a rental property. (Tr. 16.) The Board considered Applicant's response that the home would be used for his adult children and not as a rental property. It is not the Court's place to second-guess the Board's determination of the credibility of witnesses. Restivo v. Lynch,707 A.2d 663, 665 (R.I. 1998) (The Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level.") Therefore, this Court finds that the Board's conclusion that the Applicant's hardship was not the result primarily from a desire for greater financial gain was also supported by substantial evidence in the record.
With respect to the third requirement, the relief may not "alter the general characteristic of the surrounding area or impair the intent or purpose of this zoning ordinance or the comprehensive plan of the town." Ordinance § 9-8(c)(1)(c). Appellant makes two arguments with regard to this prong. First, Appellant argues that the Planning Board's Advisory opinion raises some doubt as to whether the Applicant's request would be consistent with the character of the surrounding area and with the comprehensive plan. *Page 11 
Additionally, Appellant contends that under Toohey v. Kilday,415 A.2d 732, 737 (R.I. 1980), a lay witness at a zoning hearing cannot testify to whether a proposed dwelling would conform with the general character of the surrounding area.
During the first hearing, the Board read into the record an advisory opinion (Advisory Opinion) issued by the Cumberland Planning Board. (Tr. 23.) The Advisory Opinion stated that "[f]rom a review of the neighborhood, it appears that the proposed use is consistent with the Comprehensive Plan and the character of the neighborhood." The Advisory Opinion went on to state, however, that "[t]he applicant failed to submit a site plan, and the Planning Board was unable to determine the specific relief being requested and whether the relief was appropriate . . . The Planning Board believes that this application requires additional information in order to determine whether the proposed use is consistent with the Comprehensive Plan." The Appellant argues that in light of this tentative conclusion, how the Board could have determined that granting the variance would not significantly change the character of the neighborhood is "perplexing."
The record reflects that the site plan and zoning map, which were apparently not available to the Planning Board, were clearly before the Zoning Board as it was deciding whether or not to grant the variance. (Tr. 10.) Indeed, the Board referred to the two maps extensively throughout the initial hearing and relied on them to determine that the request would not alter the general characteristics of the surrounding area. The Advisory Opinion, which was read aloud to the Board, also contained important information regarding the general character of the neighborhood: "[t]he lot in question is located in an R-2 residential zone and is surrounded by multi-family residences on small lots, *Page 12 
commercial and industrial properties." (Tr. 23.) In addition, Mr. Pikul, the Building Official, was present at the hearing and testified that he was comfortable with the way in which the Applicant handled concerns about to the proposed structure and its placement on the property. (Tr. 11.) Accordingly, there was substantial evidence in the record to support the Board's finding that the granting of the Applicant's request for a dimensional variance would not "alter the general characteristic of the surrounding area or impair the intent or purpose of this zoning ordinance or the comprehensive plan of the town."
Appellant also contends that the lay testimony of the Applicant's son-in-law, Mr. Peters, regarding whether a two-family home would conform with the other homes in the area "is not competent evidence and lacks probative force concerning the variance standard at issue." To support this assertion, Appellant relies on Toohey v. Kilday,415 A.2d 732, 737 (R.I. 1980). However, Appellant's reliance on theToohey case is misplaced. Toohey dealt with the issue of whether lay witnesses could testify before a zoning board as to the adverse effect that the granting of a particular variance would have on neighboring property values and traffic conditions. Our Supreme Court clearly stated that
 "[w]e have uniformly held since 1965 that the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." 415 A.2d at 737 (emphasis added).
Here, in response to questions from the Board, Mr. Peters — far from testifying to facts that might require a real estate appraiser or civil engineer — was merely describing the general nature of the buildings in the neighborhood: *Page 13 
 "Q: Now, could you tell the board, just briefly, what the general type of residence is located surrounding the 145 Lot? . . . On one side of the street is an industrial building, correct?
 A: Yes.
 Q: On the other side of the street, on Lot 145, what are the nature of the homes?
 A: All multiple families.
 Q. Multiple families. And they're anywhere from 75 to a hundred years old?
 A. Correct.
 Q: Okay, and that two-family then would conform with that side of the street on Abbott, is that correct?
 A: Absolutely."
This discussion also evidences that the Board members had some familiarity with the general area and may have based their decision, in part, on that knowledge. It is well-established that "[c]ompetent evidence in a proceeding before a zoning board of review may be derived from the personal knowledge of the board members." Roland F. Chase,R.I. Zoning Handbook § 105 at 151 (2nd . ed. 2006). Our Supreme Court has repeatedly stated that a zoning board is presumed to possess particular knowledge regarding local conditions and needs relating to zoning. Smith v. Zoning Bd. of Review of Warwick,103 R.I. 328, 335, 237 A.2d 551, 555 (1969) ("It is the well-settled law in this state that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance. Where it appears from the record that a decision was reached in reliance upon such knowledge, it is considered by this court to constitute legal evidence sufficient to support such a finding.") *Page 14 
Accordingly, the Board's reliance, in part, on its own general knowledge of the area to come to the conclusion that the Applicant's proposal would not be inconsistent with the character of the neighborhood was not in excess of its statutory authority or in violation of ordinance provisions.
The fourth requirement states that the relief to be granted must be the least relief necessary. Ordinance § 9-8(c)(1)(d). Although Appellant argues that the least relief necessary is "no relief at all," the Board found, and the record supports, that the minimum building requirement for a two family home is 13,500 sq. ft., and that the Applicant's lot is 11,326 sq. ft., 2174 sq. ft. short of the requirement. Therefore, the Board concluded that Applicant's request for 2174 sq. ft. of relief was the least relief necessary. Importantly, it also appears from the record that the Applicant was not asking for any other type of relief, such as from side-yard or front yard-line restrictions and that the site plan conformed with all of the Town guidelines, such as those regarding lot coverage and set back lines. (Tr. 9-10.) Accordingly, the Court finds that the Board's decision that the Applicant's requested relief was the least relief necessary is supported by substantial evidence in the record.
Finally, the Applicant must show that denial of his application will result in his suffering more than a mere inconvenience. Ordinance § 9-8(c)(1). Though in the past courts have interpreted "more than a mere inconvenience" to mean "no other reasonable alternative" — and this language still exists in the Ordinance — the General Assembly has reinstated the less demanding "more than a mere inconvenience" standard for granting a dimensional variance. See Lischio v. Zoning Bd. of Reviewof Town of North Kingstown, 818 A.2d 685, 691-92 (R.I. 2003) (noting that the 2002 amendment of G.L. *Page 15 
1956 § 45-24-41(d)(2) reinstated the old Viti standard and "lessens the burden of proof necessary to obtain dimensional relief and an applicant need show only that the effect of denying dimensional relief amounts to more than a mere inconvenience."); Viti v. Zoning Bd. of Review,92 R.I. 59, 166 A.2d 211 (1960).
Appellant asserts that the record is devoid of any evidence that the Applicant, if he can only use the property for a single family dwelling, would suffer an adverse impact amounting to more than a mere inconvenience. However, the Board determined that denying Applicant's variance "would amount to more than a mere inconvenience, in that a nice home for his children at a reasonable price would not be available on that piece of land."
The Rhode Island Supreme Court addressed the issue of an owner seeking a dimensional variance to accommodate family members in DiDonato v.Zoning Bd. of Review of Pawtucket, 104 R.I. 158, 242 A.2d 416 (R.I. 1968). There, the Court found that an applicant's need for a larger home than a zoning ordinance would permit solely because his family had increased in size was not sufficient to satisfy the more than a mere inconvenience test. Id. at 420. In so concluding, our Supreme Court defined "`more than a mere inconvenience' to mean that an applicant must show that the relief he is seeking is reasonably necessary for the full enjoyment of his permitted use." Id.
Here there is substantial evidence in the record — apart from a desire to accommodate his two children — to sustain the Board's finding that full compliance with the area requirement for a two-family dwelling would constitute more than a mere inconvenience adversely affecting full enjoyment of the Applicant's permitted use. Appellant asserts that the Applicant's hardship does not amount to more than a mere *Page 16 
inconvenience because the Applicant may still build a one-family home on the property without a dimensional variance. However, this same argument was previously made, and dismissed, in Westminster Corp. v. Zoning Bd.of Review, 103 R.I. 381, 389, 238 A.2d 353, 358 (1968). There, our Supreme Court held that "[a] use expressly permitted by the terms of an ordinance is available to the landowner as a matter of right . . . [and] [t]he very thrust of the rule laid down in Viti is that an owner is not to be deprived of the enjoyment of such a permitted use where it is made to appear that the regulatory restriction adversely affects his full enjoyment of that use." Westminster Corp. v. Zoning Bd. of Review,103 R.I. 381, 389, 238 A.2d 353, 358 (1968). The fact, therefore, that there are "other uses to which the subject property could be devoted under the ordinance without a dimensional variance is immaterial." Roland F. Chase, R.I. Zoning Handbook, § 166 (2nd ed.). The Applicant in the instant case has chosen a use specifically permitted by the terms of the Ordinance. Article 3, Section 3-4 of the Ordinance expressly permits two-family homes in an R-2 zone. Strict adherence to the lot size requirement in this case, however, would prohibit the Applicant from building a two-family home, of any size, on the property. This would have the effect of depriving the Applicant of all reasonable enjoyment of this permitted use, independent of his intention to allow his children to live there. Accordingly, this Court finds that substantial evidence exists to support the Board's conclusion that the hardship that will be suffered by the Applicant if the dimensional variance is not granted would amount to more than a mere inconvenience. *Page 17 
 Conclusion
The Court is satisfied that the Applicant has introduced reliable, probative, and substantial evidence before the Board showing that he had satisfied all of the conditions for a dimensional variance contained within Ordinance § 9-8(c)(1) and the Board's decision to grant that variance was not clearly erroneous. Substantial rights of the Appellant have not been prejudiced. Accordingly, the decision of the Board, filed April 12, 2007, granting the Applicant's application for dimensional relief, is affirmed. Counsel shall submit an appropriate order for entry.
[1] The parties' stipulation that lot 145 had in fact merged with lot 228 well before Mr. Soares had filed his application in 2005 obviates the need for this Court to discuss the issue on appeal.
[2] The Appellant contends that the Applicant's hardship is self-created. The Court will address this issue in detailinfra in its discussion of Section 9-8(c)(1)(b).