**William J. TOOHEY, in his capacity as City Solicitor of the City of Warwick**

v.

**Thomas J. KILDAY et al.**

v.

**Thomas M. MORGAN et al.**

No. 78–50–M.P.

Supreme Court of Rhode Island.

June 4, 1980.

William J. Toohey, City Sol., pro se, Thomas L. McDonald, Asst. City Sol., Warwick, for petitioner.

Manning, West, Santaniello & Pari, Joseph T. Pari, Paul M. Finstein, Providence, Frederick A. Costello, Warwick, for respondents.

OPINION

WEISBERGER, Justice.

This petition for certiorari was brought to review a Superior Court judgment affirming in part and reversing in part a decision of the Zoning Board of Review of the City of Warwick (the board). The board had denied the petitioners' application for a variance or special exception from the restrictions of a Warwick zoning ordinance. On appeal, the Superior Court found that the board had properly denied the variance requested but erroneously denied the exception. Acting on behalf of the municipality, the city solicitor petitioned the court for the issuance of a writ of certiorari to review that portion of the judgment which reversed the board's denial of the special exception. We granted the petition, *Toohey v. Kilday*, R.I., 386 A.2d 197 (1978), and issued the writ on March 29, 1978; pursuant thereto, all records pertinent to the matter have been certified to this court.

Respondents Thomas J. Kilday and Anthony C. Cunha, Jr., were the owners of a parcel of property designated as assessor's plat 266, lot 595, zone Residence A-10, and located on the easterly side of Greenwich Avenue on the corner of Natick Avenue in the city of Warwick, Rhode Island. In the spring of 1975, respondents filed an application with the zoning board seeking a variance or special exception to permit the erection of a one-and-a-half story building, a "raised ranch," in which the lower portion would be used as a physician's office and the upper story as an apartment for the physician's mother and mother-in-law. The application disclosed an intention to employ two part-time technicians in addition to a secretary, thus requiring a further exception to regulations governing physicians' offices in a residential area.

██ Under the Warwick zoning ordinance [1] §§ 5.11–5.11.5, a physician's office in a residence is a permitted use in any residential zone as a home occupation "customarily conducted entirely within a dwelling." The ordinance requires, however, that the physician himself reside on the premises and further, that the home occupation utilize for professional purposes "not more than 20% of the gross floor area * * * [but] in any event not more than 300 square feet." Finally, the physician's office component must not involve more than one employee or regular assistant who does not reside in the dwelling unit used for the home occupation.

Following a hearing on June 24, 1975, the zoning board issued a decision denying respondents' request. Respondents thereupon appealed to the Superior Court for the County of Kent, in accordance with the provisions of G.L. 1956 (1970 Reenactment) § 45–24–20. On May 11, 1976, that court remanded the case to the zoning board for rehearing because of the admission by an associate city solicitor that only four of the five members of the board had attended the initial hearing. The initial decision rendered by less than a full board was therefore void.

At some point during the pendency of the original application, Dr. Thomas F. Morgan purchased the property from respondents Kilday and Cunha, built the proposed structure, and commenced his neurological practice in the lower section; his mother and mother-in-law settled into the upper half. By the date of the second hearing before the board, on July 27, 1976, Dr. Morgan had joined respondents as a petitioner on the application for a variance or exception.[2]

Again denying the petition, the zoning board stated, as the particular reason for its

1. Although the Warwick zoning ordinance does not appear in the record of the case, and "despite the general rule that provisions of specific municipal ordinances are evidentiary facts which must be proved [before] a court of general jurisdiction," we may take notice of the ordinance without its having been admitted into evidence, since the board itself, as a municipal tribunal, could have "judicially noticed" the regulation enacted by the municipality that created it. *Weaver v. United Congregational Church*, R.I., 388 A.2d 11, 13 n.2 (1978); *Hooper v. Goldstein*, 104 R.I. 32, 241 A.2d 809 (1968).

2. Testimony adduced at the hearing indicated that the physician may have bought the property contingent upon the acquisition of the variance or exception and upon the understanding

rejection of the application for an exception, its finding that the applicant had not carried his burden of showing that the proposed use would not be inimical to the public health, safety, morals, and welfare. On motion of respondents, the two appeals were consolidated on December 9, 1976, for consideration by the Superior Court. Based upon the zoning board's record and upon memoranda submitted by the parties, the trial justice rendered a decision on January 23, 1978, in which he found that the board had erred in denying the exception in view of the reliable, probative, and substantial evidence of the whole record.[3] Our sole concern on the present petition for certiorari is whether the trial justice erred in reversing the zoning board's denial of respondents' application for a special exception.

▆▆▆ Both in his brief and in oral argument, petitioner displayed some confusion about the appropriate standard of review and pointed to our line of cases holding that a decision of a zoning board of review will be sustained on appeal if there is any legally competent evidence in the record to support it. *See, e.g., Zimarino v. Zoning Board of Review of Providence*, 95 R.I. 383, 387, 187 A.2d 259, 261 (1963). But as we delineated in explicit detail in *Apostolou v. Genovesi*, R.I., 388 A.2d 821 (1978), since 1969 when the Legislature amended § 45–24–20, we no longer review zoning board decisions directly by way of certiorari. The 1969 amendment altered the prior appellate review procedure to provide for an avenue of appeal from the zoning board to the Superior Court. 388 A.2d at 824. Hence, the

general certiorari standard of review is inapplicable in the Superior Court, which must follow the statutory criteria set forth in § 45–24–20.

▆▆▆ In reviewing the action of a zoning board of review, the trial justice "must examine the entire record to determine whether 'substantial' evidence exists to support the board's findings." *DeStefano v. Zoning Board of Review of Warwick*, R.I., 405 A.2d 1167, 1170 (1979); *Apostolou v. Genovesi*, 388 A.2d at 824–25. On certiorari to this court, we apply the "some" or "any" evidence test and review the record to determine whether legally competent evidence exists to support the findings of the court below. *DeStefano*, 405 A.2d at 1170; *Dean v. Zoning Board of Review of Warwick*, R.I., 390 A.2d 382, 386 (1978).

▆▆▆ The relevant criterion against which both the zoning board and the trial justice, although with differing results, assessed the application for a relaxation of the home-office regulations was properly that of obtaining a special exception.[4] As a condition precedent to the grant of a special exception, an applicant must establish that the relief sought is reasonably necessary for the convenience and welfare of the public.[5] A zoning board of review, however, may not deny granting a special exception to a permitted use on the ground that the applicant has failed to prove that there is a community need for its establishment. *Bonitati Bros. v. Zoning Board of Review of Woonsocket*, 104 R.I. 170, 171, 242 A.2d 692,

---

that the previous owners would repurchase it should the zoning board reject their application.

3. General Laws 1956 (1970 Reenactment) § 45–24–20 provides in pertinent part:

"The [Superior] court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: * * * (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized

by abuse of discretion or clearly unwarranted exercise of discretion."

4. *See* 3 Anderson, *American Law of Zoning* § 18.03 at 141–42 (2d ed. 1977).

5. Section 14.2.3 of the Warwick zoning ordinance authorizes the board of review

"[i]n appropriate cases and subject to appropriate conditions and safeguards to make special exceptions to the terms of this ordinance where the exception is reasonably necessary for the convenience of and welfare of the public."

*See Center Realty Corp. v. Zoning Board of Review of Warwick*, 96 R.I. 76, 189 A.2d 347 (1963).

693 (1968); *Nani v. Zoning Board of Review of Smithfield*, 104 R.I. 150, 156, 242 A.2d 403, 406 (1958). To satisfy the prescribed standard, the applicant need show only that "neither the proposed use *nor its location on the site* would have a detrimental effect upon public health, safety, welfare and morals." *Hester v. Timothy*, 108 R.I. 376, 385–86, 275 A.2d 637, 642 (1971); *Nani v. Zoning Board of Review of Smithfield*. We agree with the trial justice's conclusion that the board's denial of the special exception in this case did not rest upon evidence sufficiently substantial to have warranted the board's action.

In support of his application, Dr. Morgan testified that his Greenwich Avenue office is located in the bottom half of the raised ranch and is limited to the practice of neurology. His office hours are scheduled for three afternoons a week; he sees five new patients on Tuesdays and Thursdays and four followup patients on Mondays. On working days, according to Dr. Morgan's testimony, there should normally be no more than the six cars for which his parking lot was designed, including his, his mother's, and his secretary's, although he noted that the lot had ample space for more cars, and that, on a few occasions, there had been as many as eight.

A qualified real estate expert, Philip A. Clarkin, Jr., testified on behalf of respondents. Mr. Clarkin described the raised ranch as having an "attractively decorated exterior," expensive landscaping, and a "modest size parking lot" on the side and rear of the house. When asked how he would "classify Greenwich Avenue in the immediate surrounding area," Mr. Clarkin said that Greenwich Avenue is a heavily traveled main thoroughfare which traverses a semi retail and professional type of neighborhood mixed with a substantial residential development. In the immediate vicinity of Dr. Morgan's lot, according to the real estate broker's testimony, there are an apartment building with twenty-two units, a dress shop, a nursery, and a two-family home. Several hundred feet to the north of the property, at the intersection of Greenwich Avenue and Route 5 (also known as Main Avenue), there are an all-service gasoline station and an Apex retail outlet. There is a physician's office within a few hundred feet south of the subject property. On the westerly side, there is a combination physician's residence/office. Finally, southwest of the instant raised ranch there is a retail/wholesale oil delivery company.

Mr. Clarkin testified that adjacent to Greenwich Avenue, "a main location highway" with a "mixture of environment," is "a very fine residential area." A professional office like Dr. Morgan's would serve as a buffer, in accordance with accepted good planning principles, between that area and the nearby commercial development. In addition, Mr. Clarkin offered examples to illustrate that the presence of similar professional types of operations had no adverse effect on the value of adjacent residential properties. He further testified that the granting of Dr. Morgan's petition would not be at all detrimental to the surrounding properties and that the proposed use would not be inimical to the public health, safety, morals, or welfare.

Several remonstrants, all neighboring property owners, spoke against the granting of the petition. In particular, David Bronstein, who described himself as the president of the Greenwood Improvement Association, testified that the association was opposed to the petition. According to Mr. Bronstein, "Dr. Morgan has proved that he is not a good neighbor * * *. [The] traffic pattern has become heavier * *. [P]arking is not sufficient and cars have had to park on both sides of the street creating a traffic hazard." The principal complaint of the objectors related to the increase in traffic in the neighborhood and the alleged insufficiency of the physician's parking lot to accommodate the requisite number of cars. One remonstrant submitted photographs of the lot. Another complained that patients sometimes drove their cars up onto her lawn adjoining the doctor's driveway and that she had found litter from the parking lot on her lawn. Some objectors feared the precedential effect of granting a variance or exception to

the applicant and the adverse effect on the residential character of the neighborhood. A petition signed by thirty-four objectors was placed in evidence. A petition signed by sixty-three area residents who advocated the granting of the petition was also received in evidence.

Contrary to the zoning board of review, the trial court found that "[t]he record is clear that the close proximity of professional offices to residential property does not depreciate the residential property but in fact enhances its value," and that the addition of three employees and several patients a day would probably not cause an undue traffic problem, since the physician had a private parking lot and Greenwich Avenue is a heavily traveled highway.

The city solicitor of Warwick, however, contends that the lay testimony by the objectors concerning the traffic and parking problems was competent evidence which the respondents failed to counter with testimony by a traffic engineer. The respondents, petitioner argues, had the burden to show that no traffic hazard would flow from the granting of the special exception.

■ We have uniformly held since 1965 that the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception. *Smith v. Zoning Board of Review of Warwick*, 103 R.I. 328, 334, 237 A.2d 551, 554 (1968). Admittedly, remonstrants were lacking in the requisite expertise. In point of fact, one neighbor who testified that he himself held a real estate broker's license conceded that "I don't consider myself an expert."

■ An increase in traffic, moreover, even if it did occur, does not necessarily adversely affect the public convenience and welfare. A mere increase in traffic at the site of a proposed use is not a valid zoning criterion when neither a consequent intensification of traffic congestion nor hazard at the location accompanies it. *Perron v. Zoning Board of Review of Burrillville*, 117 R.I. 571, 577, 369 A.2d 638, 642 (1977); *Bonitati Bros. v. Zoning Board of Review of Woonsocket*, 104 R.I. 170, 171, 242 A.2d 692, 693 (1968); *Thompson Methodist Church v. Zoning Board of Review of Pawtucket*, 99 R.I. 675, 682, 210 A.2d 138, 142 (1965). The acknowledged lay judgments of the remonstrants

"as to whether the requisite traffic congestion or hazard within zoning contemplations would follow a grant of this application was a subject matter not within the testimonial competence of a witness lacking in expertise." 99 R.I. at 682, 210 A.2d at 142.

Although the board in its decision acknowledged that respondents' expert witness testified that the proposed use would not be inimical, it chose rather to rely upon the testimony of the objectors "as to the number of automobiles the proposed use attracted and the inadequacy of the parking at the proposed site." The board's reliance upon these lay judgments was improper. The board, furthermore, ignored the remonstrants' failure to explain why Dr. Morgan's particular neurological practice would result in any greater traffic hazard or congestion than would that of another physician whose "home occupation" complied with the ordinance and did not require a special exception.

■ In addition, the zoning board based its decision in part upon its own knowledge of the area. Without disclosing in the record the particular evidence upon which it relied, the board stated merely that it was "well familiar with the area in question and knows of its character." Certainly a board may consider probative factors within its knowledge in denying the relief sought or may acquire adequate knowledge through observation and inspection on a view. But "our decisions must necessarily reflect the record as we find it, uninfluenced by factors which may have been known to the board but of which we have no knowledge." *Goldstein v. Zoning Board of Review of Warwick*, 101 R.I. 728, 733, 227 A.2d 195, 199 (1967).

738

The board should have disclosed on the record the observations or information upon which it acted. *Perron v. Zoning Board of Review of Burrillville*, 117 R.I. at 576, 369 A.2d at 641. *See also DeStefano v. Zoning Board of Review of Warwick*, R.I. 405 A.2d 1167 (1979); *Hester v. Timothy*, 108 R.I. 376, 275 A.2d 637 (1971); *DiIorio v. Zoning Board of Review of East Providence*, 105 R.I. 357, 252 A.2d 350 (1969). Instead, the record is barren of any disclosure of the facts upon which it concluded that the applicant should not prevail.

Since the testimony offered by the remonstrants on adverse traffic conditions and neighboring property values was lacking in probative force and since the board failed to reveal the nature of its knowledge of the character of the subject area, we hold that the trial justice was correct in finding that the evidence was inadequate to support the board's conclusions. The denial of the special exception upon the record of competent evidence adduced before the board constituted an abuse of discretion by the board, and its findings were clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the record certified to this court is remanded to the Superior Court with our decision endorsed thereon.