DECISION
This matter is before this Court on an appeal from a decision of the Zoning Board of Review of the Town of Charlestown denying plaintiff's request for zoning relief. Jurisdiction is pursuant to G.L. 1956 (1991 Reenactment) § 45-24-69.
Facts
Richard Serra (plaintiff) is the owner and operator of a retail business known as Rippy's Liquor Mart located at 4158 South County Trail, Charlestown, and designated as Lot 182 on Assessor's Map 28. The lot, with a frontage of 433 feet and a depth of 639 feet, occupies 5,763 acres and is zoned business/residential. Plaintiff's retail business (a convenience and liquor store) as well as his private residence is located on the property.
Plaintiff filed an application for a special exception to operate a gasoline filling station. The Charlestown Zoning Board of Review (Board) held public meetings January 31, 1994, February 10, 1994, and March 10, 1994. In support of his application, plaintiff presented lay and expert witnesses including Joseph Anderson, a supplier with Kenyon Oil Company; George Loomis, a soil scientist; Conrad Decker, a mechanical engineer; and Michael Lenihan, a real estate appraiser. The record also contains plaintiff's testimony, several letters in favor of the application, and one letter in opposition.
On March 10, 1994, the Board voted unanimously to deny plaintiff's application. The decision letter of March 14, 1994 indicated: "The Board stated as findings that there is potential danger to the aquifer with the possibility of leaks, there were no traffic counts or market tests made. The soil scientist stated that the soils were quite permeable and it is a well head area." The plaintiff has filed the instant appeal.
On appeal plaintiff argues that the Board's denial of his application was erroneous. The plaintiff contends that the evidence demonstrated the application would serve the public convenience and welfare and that the Board denied the application on the basis that a public need was not shown.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D) which provides:
Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25).
Special Use Permit
An applicant for a special use permit (formerly called a special exception) must demonstrate that the relief sought is reasonably necessary for the convenience and welfare of the public. Toohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980). The applicant need not show there is a community need for the permitted use, but must show that "neither the proposed use norits location on the site would have a detrimental effect upon public health, safety, welfare and morals." Toohey v. Kilday, 415 A.2d at 736 (quoting Hester v. Timothy, 108 R.I 376, 385-86,275 A.2d 637, 642 (1971)). Traditionally, considerations of public health and safety are afforded the greatest weight when reviewing a zoning board's decision to grant or deny a special exception.Mendosa v. Corey, 495 A.2d 257, 263 (R.I 1985).
Plaintiff asserts that the Board's decision to deny his application is clearly erroneous and against the weight of the evidence presented at the hearings, and that the Board substituted its opinions for those of the experts whom plaintiff presented at the hearings.
The plaintiff presented evidence that the gasoline station was reasonably necessary for the public convenience and welfare. Plaintiff testified that the station would be an accessory use to the already existing liquor/convenience store; Mr. Joseph Anderson, the oil company supplier, testified that it would create competition for the two other gasoline stations existing in the area; and Mr. Michael Lenihan, a real estate appraiser, opined that the gasoline station was reasonably necessary for the public convenience and welfare because it was a self-service station which would provide cheaper gas than a full service station, and that the existence of a convenience store would allow people to run several errands at once.
The Board also received three letters in favor of the special exception. One Charlestown resident wrote that she supported the gasoline station because plaintiff's existing business had good prices. The owner of one of the nearby gasoline stations, Carpenter's Gulf, wrote that he had no objection to plaintiff's application. Another residence wrote that he supported plaintiff's application because a nearby gas station/convenience store was overpriced and by allowing plaintiff's application, it would stimulate competition because plaintiff had "convenient prices for a long time."
The plaintiff also presented evidence that the gasoline station would not have a detrimental effect upon public health, safety, welfare and morals. Lenihan testified that in his opinion the gasoline station would not affect the market value of houses in the area. Conrad Decker, a mechanical engineer, testified that greater than minimal safety features would be installed in the underground storage tanks and above-ground safety features. Decker also testified that the soil was conducive for this type of installation. George Loomis, a soil scientist, testified that the site was located in an aquifer recharge area and that the subsurface water flow would be in an easterly direction toward plaintiff's residence and the aquifer.
One letter opposing the special exception expressed concern that property values of the surrounding homes would be lowered, and that the gasoline smell would not be beneficial for children or for the resale of their property. Another objector, J.R. Russo, who owned the nearby Citgo's station, personally appeared at the hearing. He presented a letter stating that the two existing stations were operating at 30% capacity and could double their capacity without adding additional underground storage tanks.
Also contained in the record is evidence suggesting a detrimental effect upon public health, safety, welfare and morals. Decker and Loomis testified that a gas leak would rapidly seep down into the soil and water source. The advisory opinion of the Planning Board, requested by the Zoning Board, recommended that the special exception not be granted. The Planning Board based its recommendation on the fact that the site was in an aquifer recharge area: "Assessor's Map 28 Lot 182 is not an appropriate location for petroleum storage tanks due to the fact that the site is located in a groundwater reservoir recharge area." (Letter of 2/17/94.) The Planning Board also voiced concerns that possible accidents or leaks might detrimentally affect the future health, safety, and welfare of the Town and that the Comprehensive Plan's goal to protect groundwater should be given due deference. (Id.)[1]
The committee members specifically noted the detrimental effects of granting the special exception. In the discussion before the vote was taken, Mrs. Wheeler stated she was concerned about the well head protection areas, and she commented on the lack of a traffic count to support a need for another gas station. Mr. Wilcox and Mr. Wiskari stated they were concerned about possible leaks of gasoline into the water table. The Chair, Mrs. Quigley, noted that there was no traffic count data or market surveys substantiating a need for another gasoline station. She also expressed concern about possible leaks and rejected Lenihan's opinion that granting the application would not detrimentally affect surrounding property market values. Regarding the Planning Board's reliance on the town's comprehensive plan, the Chair stated, "I happen to think it's a valid argument that you cannot — You can't base a decision on Regulations that have not been put into place yet. I think that's something that we have to be concerned about when making a decision. There's certainly other issues involved here." Mr. Hodshon agreed with the Chair that the existence of a gasoline station would lower property values and stated that he believed the Planner's opinion should be given great weight and that the recharge areas should be protected. Mr. Wilcox called attention to the list attached to the Planner's letter which listed gasoline as a higher risk of ground water contaminants.
In addition to the previous discussion, the Board members made the following remarks during roll call. Mrs. Wheeler stated that she voted to deny the application because "I don't think that testimony has been given that would support the fact that the public convenience and welfare would be substantially served. There were no traffic counts of any kind, no market tests of any kind made to support the fact that one was needed where it would be." Mrs. Wheeler also stated that there was no testimony that the gasoline station "would not result in conditions that would be unfriendly to the public health, safety, morals, and general welfare of the community." Mr. Rzewuski generally denied the application on the basis of the public health and safety. Mr. Wilcox denied the application stating, "I don't believe that the public convenience and welfare will be substantially served and I believe it will create conditions that — such as hours of operation, possibility of leaks, I do not believe it will be good for the general welfare of this community." The Chair, Mrs. Quigley, voted to deny for the following reasons:
 "The Applicant has not demonstrated that the public convenience and welfare will be substantially served. The Board received no information that there was in fact a need demonstrated by either a traffic count or a market survey for the proposed gas station facility. Also, that the Applicant has not demonstrated that to allow such a use would not result in or create conditions inimical to the public health, safety, et cetera of the community and I base that on the testimony of the soil scientist, who they themselves hired, who said that the soil was in fact quite permeable and it is a well head area and we are charged under the Chapter, Chapter 281-2. The Regulation itself says, `is made with reasonable consideration among other things to the character of the district in its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the town and to preserve and enhance the beauty of the community, the character of neighborhoods.' I have in no way been convinced by the real estate person hired to give testimony here that it would not in fact be the case if we were to allow this use in that neighborhood. So, the Application has been denied."
The plaintiff correctly argues that public need is not a requirement for the granting of a special exception. Toohey v.Kilday, 415 A.2d at 735. Thus, the Board's rejection of the application on the basis of public need (i.e., the lack of traffic counts or market tests) was erroneous. However, this Court is not entitled to substitute its judgment for that of a zoning board if it can find substantial evidence in the record to support the Board's conclusion. Apostolou v. Genovesi, 120 R.I. at 505, 388 A.2d at 825.
After a thorough review of the entire record, this Court finds the Board's decision supported by substantial evidence that the proposed use or its location would have a detrimental effect upon the public health, safety, welfare, and morals. Toohey v.Kilday, 415 A.2d at 736. The Board had before it expert testimony that the site was located on an aquifer recharge area and that gasoline leaks, which were a possibility, would quickly seep to the water level and adversely affect the aquifer. The Board also relied on the advisory opinion of the Town Planner that concerns over protecting the recharge area made the site inappropriate for plaintiff's intended use. Moreover, contrary to plaintiff's argument, the Board did not act arbitrarily in rejecting the testimony of plaintiff's real estate expert that the proposed gasoline station would not adversely affect residential values. In rejecting the testimony, one Board member, Mr. Hodshon, noted that he rejected the testimony based on his own previous experience as an appraiser. The Board's rejection of plaintiff's expert testimony on this issue was thus permissible. See Smith v.Zoning Board of Warwick, 103 R.I. 328, 334-35, 237 A.2d 51, 554-55 (1968).
Thus, because "considerations of public health and welfare are relevant to a zoning authority's decision to grant a special exception" and because "a reviewing court should exercise restraint in substituting its judgment for the judgment of the zoning board which is based on the evidence before it," this Court finds that the Board's decision was not clearly erroneous.See Mendonsa v. Corey, 495 A.2d at 263 (where trial court erroneously reversed Board's order denying special exception based in part on evidence of threat to area drinking water). After a thorough review of the entire record, this Court finds that the Board's decision to deny the special exception is supported by reliable, probative, and substantive evidence, and that substantial rights of the plaintiff have not been thereby prejudiced. Accordingly, the Board's decision is hereby upheld.
Counsel shall submit an appropriate judgment for entry.
[1] As of the date of the Board's decision, the Town's Comprehensive Plan had not yet been approved.