DECISION
Before this Court is an appeal from a decision of the Town of Westerly Zoning Board of Review (Board) failing to approve Bess Eaton Donut Flour Company, Inc.'s (appellant) request for a special use permit for the inclusion of a drive-through window along with construction of a bake shop at the corner of Granite and School Streets in Westerly. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The appellant filed an application for a special use permit with the Board requesting the inclusion of a drive-through window with a bake shop it intended to build on property located at the corner of School and Granite Streets in Westerly. The property is further identified as Plat 67, Lots 211, 212 and 213. At the time of the application, the property was zoned B-2.[1] At public hearings held on December 2, 1998, and April 7, 1999, the Board heard testimony from three experts presented by the appellant, from a Bess Eaton construction manager, and from several neighboring remonstrants.
At the hearing on December 2, 1998, the Board accepted Michael Lenihan, Esquire, a certified real estate appraiser, as an expert. Mr. Lenihan testified that he visited the proposed site and that he was personally familiar with the site as a former renter of one of the existing buildings at the site. He further testified that across the street are a shopping center and a car agency, that on one side is a business, and that on the other side are commercial uses. The area behind the site is residential. He testified that the drive-through facility would have no impact at this site, and that he has never found a drive-through to have any kind of significant effect on an area. (Tr. at 7). He also testified that the use would be compatible with the surrounding neighborhood and would not adversely affect the neighborhood. Id.
The Board next acknowledged Raymond Cherenzia of Cherenzia 
Associates, Ltd., a licensed professional land surveyor and engineer, as an expert. Cherenzia associates prepared for the applicant the site plan that was before the Board. As pertaining to this application, Mr. Cherenzia testified regarding the fencing and landscaping proposed along the back of the site where the neighboring properties are residential. He also testified about the design for entering and exiting the parking lot and the lot's design to encourage exiting onto Granite Street to a right turn only.
The Board next accepted Francis. J. Perry, and independent traffic engineer, as an expert. Mr. Perry testified that he performed a traffic count survey on Granite Street during what would be peak hours of the appellant's business. He testified regarding the design and use of the three service windows for ordering, paying and picking up orders. Mr. Perry also testified that he believed that the drive-through window would not have any type of an adverse impact on Granite or School Street. A traffic study prepared for the applicant by Mr. Perry was submitted as a full exhibit. Mr. Perry was questioned extensively by Board members about traffic considerations for entering and exiting the parking lot. Of particular concern to the members was exiting traffic attempting to take a left turn onto Granite Street.
Peter Huff, the construction manager for the applicant, testified that he assisted in choosing this particular site for the donut shop and drive-through as this site provided more room for the stacking of vehicles.
Several neighborhood residents spoke against the drive-through. The neighbors primary concerns were with the impact of the drive-through on the residential homes behind the shop; with the potential for increased traffic, particularly with children going to school down the street; with the potential for litter; and with the belief that a drive-through window was incompatible with neighborhood.
The board then heard from the president of Bess Eaton, Louis Gencarelli, Mr. Gencarelli stated that the store hours would probably be from 5 a.m. to 11 p.m. or midnight and that the drive-through would be open whenever the inside store was open, and possibly after the inside store were closed.
The hearing was continued to give the appellant an opportunity to compile a report concerning traffic accidents, including traffic accident data for the intersection of School and Granite Streets from the Westerly Police Department. At the hearing on April 7, 1998, the Board received the traffic report from the appellant, questioned the appellant's witnesses, and heard additional concerns from neighbors. The hearing was then closed and the Board discussed and voted on the special use permit application.
The board voted 3-2 in favor of the request for the special use permit for the drive-through. The concurring vote of 4 members is required in order for a request for a special use permit application to be approved. G.L. § 45-24-57(2)(iii). As the present application failed to obtain the necessary votes, the application was denied.
On appeal, the appellant argues that the Board's chairman improperly substituted his judgment for that of the drafters of the zoning ordinance by ruling that a drive-through would per se create a nuisance, that the Board failed to make findings of fact, and that the only expert testimony before the Board was sufficient to grant the application.
 Standard of Review
This court possesses appellate review jurisdiction of a zoning board of review decision pursuant to G.L. § 45-24-69(D):
 "(D) The court shall not substitute its judgment for that of the zoning board or review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In reviewing the action of a zoning board of review, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."Toohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980) (citing DeStefanov. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979); Apostolou v. Genovesi, 120 R.I. 501, 504,388 A.2d 821, 824-25 91978)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance." Apostolou
at 825. Moreover, this court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously find" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey495 A.2d 257 (R.I. 1985)(citations omitted).
 Special Use permits
At the time of the appellant's application, the property in question was classified as B-2, which permitted a drive-in restaurant by special use permit only. The standards for special use permit approval at that time required that:
 "(1) It shall be compatible with neighboring uses.
 (2) It will not create a nuisance in the neighborhood.
 (3) It will not hinder the future development of the Town as set forth in the Comprehensive Plan."
Westerly zoning ordinances § 3.4(E)(1994).
The appellant argues that the Board chairman improperly substituted his judgment for that of the zoning ordinances by ruling that a drive-through facility would per se create a nuisance. The Board responds that the chairman properly applied the standards for a special use permit approval.
The Rhode Island Supreme Court has held that where town zoning ordinances specifically provide for a use by special permit, the town has implicitly legislated that the use is harmonious with the other uses permitted in that district, unless the standards for a special exception are not satisfied with respect to its establishment at a particular location. Perron v. Zoning Bd. ofReview of the Town of Burrillville, 117 R.I. 571, 574,369 A.2d 638, 641 (1977). In Perron, the Court found that the board improperly determined that the conditional use would be harmful anywhere in the district and did not consider the standards for special exceptions at the location specified in the application. Id. at 640.
In the present case, contrary to the appellant's argument, the chairman specifically addressed each element for the standard for approving a special use permit and addressed his concerns to the application site. (Tr. at 45-46). For example, during the Board's discussion of the present application, the chairman found that [a drive-through] "is compatible" with neighboring uses. (Tr. at 45). The chairman went on to state that even though the zoning classification is presently commercial, at this time the area is residential and a drive-through would have a negative impact on the neighborhood. (Tr. at 46, 48). While he agreed with the appellant's expert that there would not be an increase in the volume of traffic at the site, the chairman's concern was that the flow of the existing traffic going in and out of the site would create a nuisance. (Tr. at 47-8). The chairman stated:
 "[e]ach time I've looked at this plan, it's really improved. Every time I looked at it — they went out to try to make this the best plan for a drive-through window at this site. But no matter what they do there, I feel that any type of drive-through there that would create the traffic that a doughnut shop would, . . . that this is going to create in and out of there would be a nuisance."
(Tr. at 47).
It is clear from these statements that the chairman was deliberating about the present site, not the zoning classification in general. The final criteria for approval of a special use permit looks to the future development of the town in accordance with its comprehensive plan. Here, the chairman clearly considered the present use of the neighborhood and the town's responsibility to consider the impact on the town, and determined that the drive=through would have a negative impact. (Tr. At 46-7). This court finds that the chairman did not improperly substitute his judgment for that of the zoning ordinances, nor did he conclude that a drive-through anywhere in the district would be incompatible with the neighborhood. This court further finds that the chairman properly applied the standards for approval of a special use permit.
The appellant next argues that the dissenting members failed to make specific factual findings regarding traffic and therefore, there was no probative evidence in the record upon which their decision could be based. Specifically, appellant states that the Board's decision rested on speculation and lay testimony. The Board responds that the dissenting members adequately stated their reasons for voting against the application.
In Toohey v. Kilday, the court upheld the trial justice's finding that the zoning review board improperly denied a special use permit due to inadequate evidence in the record.415 A.2d 732, 737 (1980). In Toohey, the zoning board heard testimony from the applicant and from a real estate expert that the petition would not be detrimental to the surrounding properties and that the proposed use would not be adverse to the public health, safety, morals, or welfare. Id. at 736. The board also heard from several neighboring property owners who spoke against the granting of the petition. The board, merely stated that it was "well familiar with the area in question and knows of its character", denied the special exception. Id. The court found that these types of statements were conclusory and insufficient basis to deny a special use permit. Id. at 737.
In Goldstein v. Zoning Bd. of Review of City of Warwick, the Supreme court held that it is well established that testimony by nonexpert witnesses regarding an increasing flow of traffic are lay judgments without probative force. Goldstein, 101 R.I. 728,227 A.2d 195 (1967). The court further held that the "[zoning] board may take into consideration probative factors within their knowledge in denying relief sought and their decision will not be disturbed if disclosed therein are the conditions by which they were motivated." Id. at 199.
The Supreme Court has also held that while traffic congestion is germane as to whether or not a proposed use would adversely affect the public convenience and welfare, the evidence must relate to whether the traffic generated by the proposed use will intensify the congestion or create a hazard. Bonitati Bros. v.Zoning Bd. of Review of Woonsocket, 104 R.I. 170, 171,242 A.2d 692, 693 (1968).
In the present case, while the Board did not render a formal decision, it is clear from a review of the certified record that the dissenting members did state the factors within their knowledge which they relied upon in concluding that a drive-through at this site would create congestion and cause a traffic hazard. For example, Mr. Ouimette stated that he travels to the area when bringing his son to a school bus stop and observed other children also being dropped off at school bus stops or at the nearby school, that he has gone to the site to study the traffic, and that in the morning there is also a lot of foot traffic to the nearby school. Mr. Ouimette then concluded that a drive-through would at this site would be a nuisance and create a traffic hazard based on these factors. (Tr. at 47-8). The chairman, while recognizing that he agreed with the appellant's expert that traffic would not increase, stated that the problem with traffic would be the need for stopping and pulling into the lot and that traffic going in and out of the site would be a nuisance. (Tr. at 47-8). Therefore, this court finds that the dissenting members did not merely state conclusions as the board did in Toohey, but that the dissenting members listed the facts on which they based their conclusion that the proposed use would increase congestion and create a hazard.
In addition, while neighboring remonstrants did voice their concerns about traffic problems that the drive-through might create, there is nothing in the record before this court to indicate that any of the Board members erroneously relied upon this testimony in rendering their decision.
As this court cannot substitute its opinion for that of the Board on the weight of the evidence, this court finds that there was sufficient, competent evidence in the record to support the dissenting members' denial of the special use permit based on incompatibility with the surrounding neighborhood and the threat of increased traffic congestion and hazard.
 Conclusion
After review of the entire record, this court finds that the decision by the Board to deny a special use permit is supported by substantial evidence in the record and was not arbitrary and capricious. The court further finds that substantial rights of the appellant have not been prejudiced.
Counsel shall submit the appropriate order for entry.
[1] The property is presently classified as HC, highway commercial. Pursuant to G.L. § 45-24-44, the application was properly reviewed in accordance with the zoning ordinance in effect at the time the completed application was submitted for review.