DECISION
The plaintiff appeals from a decision of the Zoning Board of Review of the Town of Lincoln, sitting as the Town's Planning Board of Appeal ("the appeal board"). The appeal board on June 1, 1999 denied the plaintiff's appeal from a decision of the Town's Planning Board ("the planning board") rendered on January 27, 1999, which denied approval of a proposed subdivision plan submitted by the plaintiff. This Court's jurisdiction is established by G. L. 1956 (1999Reenactment) § 45-23-71.
The plaintiff contends, first, that the decision of the planning board exceeded its authority because it measured the minimum length of a proposed cul-de-sac street in the plaintiff's subdivision from the nearest intersection with an existing dual egress street, even though that intersection was beyond the boundaries of the proposed subdivision plat. The plaintiff points out that the pertinent subdivision regulation requires only that "[c]ul-de-sac streets shall not be more than six hundred (600) feet in length . . . ". The regulation does not specify the terminals between which the maximum distance is to be measured. The plaintiff argues that, so long as the street proposed in its subdivision plat is less than six hundred (600) feet in length within the subdivision, the regulation is literally satisfied, even if the street is tacked on to the end of another accepted cul-de-sac of any length.
The defendants respond that the planning board is permitted, even required to consider the interests of the entire town in promulgating and interpreting its land development regulations. The plaintiff's suggestion that the planning board's jurisdiction is limited to the proposed subdivision is frivolous. Obviously the planning board has town-wide jurisdiction. The plaintiff points to nothing in the enabling statute and the regulation which forbids the planning board from measuring the length of cul-de-sac streets from their nearest intersection with an established dual egress street within or beyond the proposed subdivision. An interesting jurisdictional question might be raised, if such an intersection were beyond the town or state line, but there is no suggestion that there is not an immediately accessible town street within six hundred feet of the plaintiff's land, or that the land is incapable of development with multiple routes of public access to a network of accepted town streets.
The defendants note that § 45-23-31 requires that its local subdivision regulations must "be construed in a manner that will further the implementation of, and not be contrary to, the goals and policies and applicable elements of the comprehensive plan." In the Town Comprehensive Plan, as adopted in 1992, and amended in 1995, the Town adopted among its goals and policies with respect to its major and minor circulation systems the following:
 * * *
 "3. Maintain road development policies that provide for neighborhood safety while also ensuring adequate emergency access to all neighborhoods and reasonable circulation options.
 * * * 9. Refine subdivision street design and construction standards that enhance neighborhood character."
The planning board is clearly entitled to consider neighborhood requirements, as well as townwide standards, when it construes and applies its own regulations. The long-standing and reasonable construction an administrative agency applies to its own regulations is entitled to some respect by a reviewing court. See Lerner v.Gill, 463 A.2d 1352, 1358 (R.I. 1983) (Holding that courts may choose to defer to agency's "interpretive rules", but are not required to do so). See also Cohen v. Brown University, 101 F.3d 155, 173,cert. den. 520 U.S. 1186, 117 S.Ct. 1469, 137 L.Ed.2d 682, (1st Cir. 1996). (Agency's construction of its own regulations entitled to substantial deference.)
A limitation on the overall length of dead-end cul-de-sac streets in residential neighborhoods is eminently reasonable, particularly where, as here, town planners seek to avoid the stacking of one cul-de-sac upon another by developers, who wish to avoid the limitation of the regulatory requirement. This Court finds that the requirement by the planning board that a cul-de-sac street be measured from its intersection with a dual egress town street, and not from its junction at a plat boundary with another cul-de-sac or dead-end street, is a reasonable construction of the regulation.
The decision of the planning board, as affirmed by the board of appeals, was well within the authority granted to it by the enabling statute and the regulations issued by the planning board pursuant to the statute.
The plaintiff, next, argues that the appeal board's decision ought to be reversed because there was no competent evidence in the record to support its decision. The plaintiff does not contend that, if the length of the proposed street is measured as required by the planning board's interpretation of the regulation, it does not exceed the six hundred foot limitation specified in the regulation. In fact, at the public hearing before the planning board on January 27, 1999 the plaintiff sought a waiver, which it called a variance, from the road length requirement but, as explained below, it provided no evidence in support of its request for that waiver.
In the record considered by the planning board and reviewed by the appeal board and certified to this Court is a plan entitled "Lincoln Terrace, Section 9, Lincoln, RI, Subdivision of Land for Building Systems, Inc., A.P. 14 Lot 90, Duxbury." That plan shows that the subdivision is proposed to be served by a single cul-de-sac street called "Cawley Dr[ive]." That proposed street is obviously an extension of Holiday Drive, apparently also a cul-de-sac street. The length of Cawley Drive is variously described in the record of this case as anywhere from approximately 450 to 580 feet. There is no evidence of the length of Holiday Drive before it intersects with another street which is not itself also a cul-de-sac or dead-end street.
The appeal board argues that it and the planning board could base their respective decisions on their knowledge of the area, citingToohey v. Kilday, 415 A.2d 732 (R.I. 1980). The problem in this case is that neither board claimed to have based their "finding" that the cul-de-sac street, when measured from the nearest intersecting street was greater than 600 feet on their knowledge or observation of the area. See Restivo v. Lynch, 707 A.2d 663, 666-67 (R.I. 1998). Nevertheless, the plaintiff would not have requested a waiver on January 27, 1999, unless it agreed that measured by board standards the proposed street exceeded 600 feet. The plaintiff never argued before the planning board or the appeal board that, measured as required by the regulation under the board's construction, the proposed street actually measured less than six hundred feet. The plaintiff has always taken the position that the method of measurement was improper and that it was unfair to impose that method on its proposal without adequate notice immediately before it was to come on for public comment.
Based on the entire record before the appeal board, as certified to this Court, there is substantial competent evidence that the proposed cul-de-sac street exceeds six hundred feet when measured from its intersection with the nearest town street which is not itself a dead-end. Such evidence includes the plaintiff's application for a variance or waiver of the street length requirement, and the drawings labeled as Exhibits A-1 and A-2 before the planning board. SeeApostolou v. Genovese, 120 R.I. 501 (1978).
Finally, the plaintiff urges that the decision of the planning board was arbitrary and capricious because it had no notice of the board's construction of the regulation in sufficient time to address that requirement prior to a final hearing and decision by the board. Important to the plaintiff's claim is the fact that the board's standard for measurement of street length for cul-de-sac streets was not in writing, and obviously, not published. The only way for an applicant to learn how its proposed street would be measured was to ask the board.
The plaintiff's proposed subdivision was a major subdivision, as defined in § 45-23-32(22), since more than five lots were proposed. Accordingly, § 45-23-35(a) requires that at least one pre-application meeting be held, to "allow the applicant to meet with appropriate officials, boards and/or commissions, planning staff, and, where appropriate, state agencies for advice as to the required steps in the approval's process, the pertinent and local plans, ordinances,regulations, rules and procedures and standards which may bear uponthe proposed development project." (Emphasis supplied). The record discloses that three pre-application meetings were held: May 10 and July 26, 1995 and January 24, 1996. At the January 24, 1996 meeting the planning board noted that the road design had been altered to meet regulations and to meet an existing street. The length of the road was noted to be 580 feet. At no time during any of these pre-application meetings, did the planning board advise the applicant, as required by § 45-23-35(a), that the length of its proposed street was to be measured from its intersection with an accepted street not itself a cul-de-sac. While the principal concern at the last pre-application meeting was with surface water drainage, at least one abutter did express some concern about street access, but only because of the threat of flooding, not because of any problem with its length.
The next step in the statutory approval process according to §45-23-39 for a major subdivision is the submission of a master plan, which may be combined with preliminary plan review as provided by §45-23-39(c). Apparently, the planning board decided to combine master plan and preliminary plan review in this case. The first such review in the record took place on May 27, 1998 on an application certified as complete on January 11, 1996. Clearly, the developer must have consented to the planning board's failure to act on the application within one hundred and twenty days as required by §45-23-41(f). At this hearing the proposed road is noted to be 500 feet in length with a cul-de-sac. There is no explanation for the disappearance of eighty feet, nor is any reference made to the points from which measurement is required to be made. The application was "tabled for further review," again with the implied consent of the developer. Once again, the record shows concern by the planning board with drainage and not ever with road length.
A modified plan was reviewed by the planning board at its next meeting on June 24, 1998. Once again virtually the sole reported concern was with surface water. The application was tabled, again with implied consent, "to review detention pond." From the record there was no reason for the plaintiff to modify its proposed road, nor did the planning board advise, suggest or recommend any such modification. When the master-preliminary plan next came up for further review on September 23, 1998, the planning board's notes have no reference to any concern about street length. Once again, the focus is exclusively on drainage concerns. Apparently, no consideration was accorded to § 45-23-41(f), which would have affected this preliminary plan, unless it was understood that the plaintiff intended to modify the plan or present further evidence that the plan would meet the planning board's concerns. At the time, the record is clear that those concerns addressed drainage alone.
On October 28, 1998 the plaintiff presented a revised proposal. The plaintiff proposed to install an underground holding tank in place of previously proposed aboveground retention ponds. The proposal was "tabled, until the tank was presented to the Town (Department of Public Works and Engineering) for approval."
By December 16, 1998, after an intervening meeting on November 18, 1998, at which road length was not mentioned, the plaintiff had changed its mind and reverted to the proposed use of a detention pond to control surface water drainage. The note of the December review contains an ambiguous report: "Length of road is 500' to first intersection, which doesn't comply with the length of road regulations." Notwithstanding the internal inconsistency of this comment, the plaintiff has acknowledged that it was thereby put on notice that the planning board might raise the issue of non-compliance with the street length requirement. Further, lending to the ambiguity of the planning board's conduct on December 16, 1998 was its conclusion that: "Subdivision meets regulations and no variances are required." Presumably, the planning board was referring to the waivers provided for in § 45-23-62(b), which are similar to variances formerly granted by zoning review boards. The planning board decided to move to a public informational meeting, optional under § 45-23-40(d) for master plans combined with preliminary plans. There is no suggestion in the record that the planning board would treat the "informational meeting" as a final hearing on the plaintiff's application.
The plaintiff argues that, if the planning board had any real problem with street length, it could have raised that problem before it sent the plaintiff's application to a public informational hearing. After all, the application had been reviewed at least since May 27, 1998, and the plaintiff had addressed every other concern expressed by the planning board. The plaintiff argues, as well, that it had no reason to expect that the planning board would deny its application without first affording it a reasonable opportunity to meet the planning board's concerns, or to be heard on its application for a waiver.
At the public informational hearing on January 27, 1999 on the plaintiff's master plan, the plaintiff at the outset of the hearing did request a waiver of the street length requirement of the pertinent regulation. The plaintiff has insisted that it first learned of the planning board's dispositive concern about its proposed street just before the commencement of the hearing. This Court concludes that it was not until the meeting of the planning board on December 16, 1998 that the plaintiff finally learned that the planning board might eventually apply its unpublished and previously undisclosed construction of the street length regulation.
After nearly two hours of the public meeting (8:05 p.m. to l0:00 p.m.), most of which was taken up by concern over the drainage system, all of which were addressed if not resolved by the plaintiff's experts, the planning board never considered the plaintiff's request for a waiver, as required by § 45-23-62(d). Then, the record discloses a confusing procedure. A motion was made and seconded that the subdivision "be taken under advisement and (to) seek proposals for an engineer study of the entire drainage area." There is no recorded vote on this motion as required by § 45-23-63. Then, abruptly, a motion was made and seconded, "to reject the subdivision because road length exceeds requirements, roadway incorrect with Board's practise of measuring at nearest intersecting street, inconsistent with the Comprehensive Plan." The motion to deny the application passed, again without a recorded vote, as required by law.
It is difficult to gainsay the plaintiff's claim of shocked surprise.
Considering the history of this application before the planning board since May 1995, where every effort had been made by the plaintiff to address each concern of the planning board, as it arose, the plaintiff could justifiably believe that, if the planning board was not satisfied with its application, it would not have sent the application to any form of public meeting without some opportunity for the plaintiff to respond to those concerns. The defendants say the plaintiff claims it was "whipsawed." It was not. It was blind-sided.
According to § 45-23-71(c), this Court "may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: * * * (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." It is a well-established rule of statutory construction that this subpart must mean something different from, or in addition to the other subparts. In this case this Court has found that the planning board had plenary discretion to deny the plaintiff's application based on the competent evidence before it. Nevertheless, that discretion may not be abused or clearly exercised in an unwarranted manner.
Since the plaintiff cannot claim that it has been deprived of its property without due process of law, because it has not so been forbidden to develop its land as to deny it all beneficial use of its premises, it cannot claim that the defendants have violated its constitutional rights. Nonetheless, even though constitutional standards of procedural due process may not be required, a sound exercise of quasi-judicial discretion should require that an applicant be afforded at least the same opportunity to be heard at a meaningful time and in a meaningful manner as constitutional due process would require. See Millett v. Hoisting Engineers LicensingDivision of the Department of Labor, 119 R.I. 285, 296, 377 A.2d 229, 236 (1977).
The issue in this case is whether the plaintiff had a fair opportunity to be heard before its application was finally denied on a ground not reasonably raised during the preceding administrative review process.
Our Supreme Court has said:
 "However, discretion is not exercised by merely granting or denying a party's request. The term `discretion' imports action taken in the light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having regard for what is right and equitable under the circumstances and the law." Hartman v. Carter, 121 R.I. 1, 4-5, 393 A.2d 1102, 1105 (1978).
The only discernible reason for the planning board to have reviewed the plaintiff's application with the plaintiff and its experts at planning board meetings during 1998 was to permit the plaintiff to address the planning board's concerns. Applying the provisions of the enabling act literally, the planning board could just as well have denied the application in June 1998 out of hand without bothering with the public informational meeting of § 45-23-40(d) or the public hearing required by § 45-23-41(d). The public informational meeting of January 27, 1999 was just that, a mere meeting, not a public hearing such as required for a major subdivision by § 45-23-39(b).
Denying the plaintiff's application out of hand at the end of a two hour public informational meeting on new grounds without a fair opportunity for the plaintiff to address those grounds shows utterly no "regard for what is right and equitable under the circumstances and the law." Equity and right demand that the planning board accord to this plaintiff a fair opportunity to be heard on the question of its compliance with the street length requirement and also on its request for a waiver, if it is unable to comply with the literal requirements of the regulation, as construed by the board.
The Court concludes that the procedure followed by the planning board at the public informational meeting of January 27, 1999 was characterized by such an abuse of discretion as to deny the plaintiff a fair opportunity to be heard.
The appeal board felt that, because it could not substitute its own judgment for that of the planning board, it could not reverse the decision of the planning board, even for a serious procedural irregularity. They were mistaken. According to § 45-23-70(a), "The board of appeal shall not reverse a decision of the planning board or administrative officer, except on a finding of prejudicial proceduralerror, clear error or lack of support by the weight of the evidence in the record." (Emphasis supplied). The existence of grossly prejudicial procedural error is clear in this case.
For all the foregoing reasons the decisions of the board of appeal and the planning board will be vacated and set aside. This case will be remanded to the planning board for its further review at the preliminary plan stage, pursuant to §§ 45-23-39(b) and 45-23-41. The planning board may apply its standard of measuring cul-de-sac street length from the nearest intersection with an approved street with two means of egress, within or beyond the subdivision. The planning board will consider and hear the plaintiff on the plaintiff's application for a waiver or modification. After a full and fair hearing before the planning board all the avenues of administrative and judicial appeal from adverse decisions will, of course, be open again to the parties. See Lemoine v. Department of Mental Health,Retardation and Hospitals, 113 R.I. 285, 290-92, 320 A.2d 611, 615 (1974).
The plaintiff will submit a form of judgment for entry on notice to the defendants.