DECISION
Before this Court is David Hutchinson's appeal of the April 14, 2000 decision of the Zoning Board of Review of the Town of Exeter (Board). The Board denied Hutchinson's appeal from the revocation of a zoning certificate issued by the Exeter Building and Zoning Inspector. The adjacent parcels of property at issue are designated as Assessor's Plat 36, block3, lots 13 and 14, zoned RU-4, and located on the southerly side of Hallville Road in Exeter Rhode Island. The Board determined that lot 14 was illegally subdivided into two nonconforming lots without approval by the Town of Exeter Planning Board: therefore, the Board denied Hutchinson's appeal. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS/TRAVEL
Lot 13 constitutes a small, undeveloped lot of record with .34 acres of area. It is situated in Exeter, Rhode Island on Sodom Trail, which becomes Hallville Road. The lot was created in 1944 by deed to William Albro from John Reynolds. On or about May 29, 1985, Albro deeded the same to himself and Robert Mattscheck as joint tenants. After Albro's death, Mattscheck deeded lot 13 to Bruce and Tammy Lowe on March 21, 1988.
The original lot 14, as designated on the Exeter Tax Assessor's Map, consisted of approximately 5.6 acres of area. Prior to a subdivision, lot 14 was owned by Carolyn Mattscheck. There are two houses on the lot, which appear to predate zoning as testimony before the Board indicates that they are over seventy five years old. See Exeter Zoning Board Hearing, January 12, 2000 Tr. at 19. This lot met the Exeter Town Ordinance that requires four (4) acres of area in an RU-4 zone. Town ofExeter Zoning Ordnance § 2.4.2.1. In 1987, Mattscheck subdivided the original lot 14 by deeding only the westerly 3.64 acre portion (new lot 14) of the lot to Richard and Ellen Albro. Mattscheck retained title to 1.96 acres referred to as lot 14A, which included the two homes. On March 25, 1988, the Albros transferred new lot 14 to Bruce and Tammy Lowe. The Lowes later divorced, and Bruce Lowe received both lots 13 and new lot 14 as part of their settlement agreement.
David Hutchinson is a developer who took title to lots 13 and new lot 14 from Bruce Lowe on August 5, 1998. Prior to this transfer, Bruce Lowe sought a zoning certificate from the Exeter Zoning Inspector certifying that a single family dwelling could be erected on the new lot 14. The plans which the Inspector relied upon in issuing the certificate showed the original lot 14 as a 5.6 acre parcel as it was prior to the subdivision. In addition, it was expressed to the inspector that the residence would be built eighty (80) feet from the sideline boundary as required in a RU-4 zone. On May 4, 1998, the Zoning Inspector mistakenly issued the certificate for lot 13 relying on the site plans presented to him by Bruce Lowe. At the hearings, the Inspector acknowledged that the reference in the zoning certificate to lot 13 was a mistake and should have been issued for lot 14 or, in the alternative, lots 13 and 14. See Exeter Zoning Board Hearing, January 12, 2000 Tr. at 25.
Hutchinson hired a local builder, Bruce Brayman (Brayman) to clear the area of the lot where Hutchinson planned to build a house. Using an approved ISDS permit to determine where to place the house, Brayman was to merely stake off the property to prepare it for construction. Brayman put in a driveway and staked out the lot, but he went farther than instructed by actually placing cement footings for the foundation on the lot. Upon an anonymous tip, the Zoning Inspector learned that the foundation would be located thirty-nine (39) feet from the western boundary line. As stated earlier, the Exeter zoning ordinance requires a minimum side yard setback of eighty (80) feet in a RU-4 zone. Exeter, R.I., ZoningOrdinance art. II, § 2.4.2 at 44 (Dec. 12, 1995).
On December 7, 1998, upon consultation with the Exeter Solicitor, the Zoning Inspector revoked the zoning certificate. The revocation was based upon findings that lot 14 was illegally subdivided into two nonconforming lots without the approval of the Exeter Planning Board and that the side-yard setback was nonconforming and inconsistent with the 1994 site plan presented by Bruce Lowe. The subdivided lots are considered substandard because neither of them meets the four (4) acre area requirement in the RU-4 zone. See EXETER, R.I., ZONING ORDINANCE ART. II § 2.4.2 (Dec. 1995). In addition, the Zoning Inspector ordered that any further work on the structure cease and desist as of that same day.
Hutchinson appealed this determination to the Board. After a hearing on January 12, 2000 and a continued hearing on February 10, 2000, the Exeter Zoning Board upheld the Zoning Inspector's decision to revoke the Zoning Certificate. This appeal timely followed.
 STANDARD OF REVIEW
This Court possesses appellate review jurisdiction of a zoning board of review decision pursuant to G.L. § 45-24-69(D):
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"In reviewing the action of a zoning board of review, the trial justice must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Toohey v. Kilday,415 A.2d 732, 735 (R.I. 1980) (citing DeStefano v. Zoning Bd. of Reviewof Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979); Apostolou v.Genovesi, 120 R.I. 501, 504, 388 A.2d 821, 824-25(1978); see also NewEngland Naturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more that a scintilla but less than a preponderance." Apostolou, at 825. Moreover, this court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (citations omitted).
 THE ALLEGED SUBDIVISION
On appeal Hutchinson argues that the Board erred in denying his appeal and upholding the revocation of the zoning certificate. Plaintiff admits "[t]he subdivision regulation in effect in 1987 required planning board approval for this split." Plaintiff's Brief at 14. Not only has there never been any Planning Board approval, but an application for subdivision also has never been presented to the Planning Board for consideration. Before addressing the arguments raised by Hutchinson on this appeal, the procedures for a legal subdivision must be clarified.
The Exeter Zoning Regulation in effect at the time of the 1987 subdivision of lot 14 defined a subdivision as:
 "[t]he division of a lot, tract or parcel of land into two (2) or more lots, tracts of [sic] other divisions of land for sale, lease, or other conveyance, or for development, simultaneously or at separate times." EXETER, R.I., SUBDIVISION REGULATION § III (Feb. 12, 1981).
It is clear from the facts presented to this Court that the actions of Carolyn Mattscheck on April 29, 1987 resulted in a subdivision, as defined by Regulation III. Ms. Mattscheck divided the original lot 14 into two separate lots by deeding only the westerly portion of the lot while retaining title to the 1.96 acre portion that is referred to as lot 14A. The question that remains is whether this was a legal subdivision in accordance with state and local ordinances was created.
In accordance with Title 45, Chapter 23 of the Rhode Island General Laws, the Town of Exeter enacted the following regulation to deal with a subdivision of land within the Town of Exeter:
 "Under the provisions of Title 45, Chapter 23, General Laws of Rhode Island 1956, no plat of a subdivision or portion thereof shall be filed or recorded in the Office of the Town Clerk without written approval of the Exeter Planning Board. Any person intending the subdivision of land in the Town of Exeter shall procede [sic] under the regulations contained herein." EXETER, R.I., SUBDIVISION REGULATION § IV (Feb. 12, 1981).
Regulation IV delineates the procedure to be followed in order to legally subdivide land in the Town of Exeter. There is no dispute that the current or prior owners of lot 14 never followed this or any other procedure in order to legally subdivide lot 14. Accordingly, the Board determined in the April 12, 2000 decision that ". . . the portion of lot 14 owned by Bruce Lowe was not a legal lot of record as no subdivision approval had ever been obtained." Exeter Zoning Board April 12, 2000 Decision at 3.
On appeal, Hutchinson argues that lots 13 and 14 merged by operation of law curing the illegal lot split. Merger of substandard lots is governed by G.L. 1956 § 45-24-38. The statute requires "[p]rovisions may be made for the merger of contiguous unimproved, or improved and unimprovedlots of record in the same ownership to create dimensionally conforming lots or to reduce the extent of the dimensional nonconformance." G.L. 1956 § 45-24-38 (emphasis added). Pursuant to G.L. 45-24-38, the Town of Exeter enacted Exeter, R.I., Zoning Ordinance art. VI, § 1. Article VI provides in pertinent parts:
 "Where adjacent land is in the same ownership, lots smaller than the minimum dimensions will be required to be merged to form a larger lot that will conform or more closely conform to the dimensional regulations for that particular district before a building permit can be issued." EXETER, R.I., ZONING ORDINANCE ART. VI § 1 (May 2, 1977).
Hutchinson argues in his brief that "[l]ots 13 and adjacent split-of portion of lot 14 merged by operation of law when Lowe and his ex-wife obtained title to both in 1988." Plaintiff's Brief at 16. It is his contention that the net effect of the subdivision and the merger did not create any additional lots but merely changed the lot lines between lots 13 and the original lot 14. This argument ignores one simple fact: lot 14 was never legally subdivided; therefore, it could not merge with lot 13. Since lot 14 was never legally subdivided, the Lowes never owned contiguous lots of records.
In Petrone v. Town of Foster, 769 A.2d 591 (R.I. 2001), the Supreme Court held that "plaintiffs were not entitled to rely on the fact that the town accepted the deeds for recording . . . in support of their assertion that they have lawfully subdivided their property." In that case landowners who subdivided their property without approval brought action against the town and town officials alleging they unlawfully deprived them of their property rights and taxed them improperly. The Court went on to hold that the plaintiffs ". . . needed to exhaust their administrative remedies pursuant to chapter 23 of title 45 by seeking approval of any proposed subdivision from the planning board." Id. at 595-6.
Analogously, here, in order for the lots to merge, a lawful subdivision must first be created. This can only be done by following the procedures set forth in Exeter, R.I., Subdivision Regulation § IV.
 CONCLUSION
Upon review of the entire record, this Court finds that the decision of the Board is not clearly erroneous, does not violate constitutional, statutory, or ordinance provisions. The Board did not act in excess of its authority. There are no errors of law or procedures such that substantial rights of the plaintiff have been prejudiced. Therefore, the decision of the Board is affirmed.
Counsel shall submit the appropriate judgment for entry.