[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before the Court is an appeal from the Town of North Kingstown Zoning Board of Review's decision denying the application of 904 Boston Neck Road Inc., The Washington Trust Company, and Joseph DeMarco (hereinafter collectively referred to as "Appellants") for development plan approval and special use permits for the construction of a Dunkin Donuts shop with a drive up window and a separate standalone Washington Trust Company drive-up automatic teller machine (ATM) on Ten Rod Road in North Kingstown. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
Appellant DeMarco is the owner of a 56,672 square foot parcel of land located at 1241 Ten Rod Road (Route 102) in the town of North Kingstown and designated as Assessor's Plat 111, Lot No. 4, in the Land Evidence Records of the Town of North Kingstown. The property is zoned General Business and is located in Zone 2 Groundwater Protection Area as defined by the Town of North Kingstown Zoning Ordinance (Ordinance). The parcel is currently vacant and has been the subject of a number of different requests for relief.
Appellants seek to construct a Dunkin Donut shop and a stand-alone ATM addition on the property. Pursuant to § 21-284(b)(2)[1] of the Ordinance, the Appellants require land development plan approval from the Planning Commission. The Appellants also require special use permits.[2] Each of these establishments as proposed contained a drive-up window. Pursuant to § 21-325(1) of the Ordinance, a drive-up window in the General Business District requires a minimum of 40,000 square feet and queuing space for ten cars. Because the property contains 54,672 square feet, the Appellants require a special use permit to locate two drive-in windows. Additionally, the Appellants request relief from the queue requirement as the proposal provides for only five queuing spaces. The Appellants also require a special use permit pursuant to § 21-186(g)(3) (a-j) because the property is located in the Groundwater Protection Area.
On March 17, 2003, the Appellants filed an application for development plan approval with the North Kingstown Planning Commission and an application for two special use permits. On October 29, 2002, the Planning Commission denied the Appellants' application for development plan approval. The Planning Commission found that the proposal failed to meet the criteria for development plan approval, specifically Section 21-284(e) of the Ordinance. Section 21-284(e) requires that "the traffic generated by the proposed use will not cause congestion or introduce a traffic hazard to the circulation pattern of the area." Town of North Kingstown Zoning Ordinance § 21-284(e).
The Appellants appealed the Planning Board decision to the Town of North Kingstown Zoning Board of Review (Zoning Board). On December 10, 2002, and January 14, 2003, the Zoning Board held hearings on the Appellants' application. Relevant to the present appeal, at the hearing, the Board accepted reports and testimony from two traffic consultants; Robert Clinton of Vanasse Hangen and Brustlin, Inc. (VHB), retained by the Appellants; and Michael Desmond of Bryant Associates, retained by the Town. Mr. Clinton, accepted as a traffic engineer, testified regarding the design of the proposal and use of the two proposed entrances and exits. Access and egress to the subject property is accomplished in two methods. First, the property has two legal, fullaccess points onto Ten Rod Road (Route 102). These access points have been designed to limit vehicle traffic to right turn in and right turn out.[3] The Appellants have received a Physical Alteration Permit from the Rhode Island Department of Transportation approving the design of these curb cuts. Second, access is also available to the rear of the subject property through a large shopping center located immediately adjacent and to the north of the subject property. Access to this shopping center from Ten Rod Road is through a traffic signal located to the west of the subject property.[4]
Mr. Clinton further testified as to the results of a traffic study he conducted on the proposal. Mr. Clinton testified that the as Ten Rod Road has "adequate capacity . . . to accommodate the traffic volumes projected for this type of use." Transcript, December 10, 2002, p. 48. Furthermore, Mr. Clinton testified that the current level of service on Ten Rod Road during the peak travel time is Level B. Transcript, December 10, 2002, p. 46-48. According to Mr. Clinton's travel study, the increase in traffic from the proposed uses would not change the level of service.[5] Transcript, December 10, 2002, p. 46-48. Mr. Clinton further testified that the property could support the two drive-up uses and that the queuing spaces provided would be adequate.[6] Finally, Mr. Clinton opined that the proposal would not result in increased traffic congestion or introduce a traffic hazard in the area. Transcript, December 10, 2002, p. 79-80.
Mr. Desmond, a traffic and highway engineer retained by the Town, then testified regarding the proposal and its impact on traffic in the area. Mr. Desmond was originally retained by the Planning Commission to review the traffic reports from VHB. After reviewing these reports, Mr. Desmond identified a number of issues that needed to be further addressed. Mr. Desmond testified that the proposal as designed addressed all of those issues. Transcript, December 10, 2002, p. 90. Commenting on the right-hand only curb cuts, Mr. Desmond stated "I think VHB has done everything that they can do within the limits of traffic engineering design principles and standards and the requirements that the state has set on them in terms of what they can do within the states right of way." Transcript, December 10, 2002, p. 92. More importantly, Mr. Desmond indicated that the proposal would not result in traffic congestion in the area. Transcript, December 10, 2002, p. 93-94. Mr. Desmond also stated that he did not see any real safety hazard, except for the possibility of people making illegal turns.[7] Transcript, December 10, 2002, p. 95-96.
On January 14, 2003, the Zoning Board denied, on a three to two vote, the appeal from the Planning Commission's rejection of the Development Plan.[8] The Zoning Board decision contains three explicit rationales of the majority of the Zoning Board for the denial of the appeal. First, the majority of the Zoning Board found that the proposal "by failing to utilize the established traffic circulation and traffic control patterns in the area and introducing additional right hand turn movement onto and off of Route 102, represents an alteration of the general character of the area specifically with regard to the nature of the subject portion of Ten Rod Road as a transit route between surrounding areas and Routes 2, 102, and 4." Second, the majority of the Zoning Board found that the traffic generated by the proposed development would cause traffic congestion on the site and in the area. Third, the majority of the Zoning Board found that the proposed additional turning movements onto and from Ten Rod Road represents the introduction of a traffic hazard by further complicating an already complicated and difficult traffic pattern in the area.
During the January 14th Zoning Board hearing, three members of the Zoning Board elucidated on the reasons behind their denial. Two members stated that they visited the site and observed the traffic pattern in the area. Transcript, January 14, 2003, p. 10-11. One member who visited the property stated that traffic "zooms" in the area, Transcript, January 14, 2003, p. 10, and that the proposed development is going to "cause congestion [and] introduce a traffic hazard to the circulation pattern of the area." Transcript, January 14, 2003, p. 25. The other member who visited the property stated that the location is "bottle-necked with traffic in the morning hours and evening hours." Transcript, January 14, 2003, p. 19. The third member, who voted to deny the appeal, simply stated that "[t]he traffic generated will cause congestion and introduce the potential for hazards for the circulation pattern." Transcript, January 14, 2003, p. 26.
The three Zoning Board members also felt that the proposal would alter the general character of the surrounding area. One member stated that the general character of the area would be altered by having a "short-order-type place in that rural area." Transcript, January 14, 2003, p. 25. The second member simply stated that "it's my opinion that the general character of the surrounding area will be changed significantly and impaired." Transcript, January 14, 2003, p. 25-26. The third member, while voting to deny, simply stated that his reasons "pretty much mirror the statements of [the second member]." Transcript, January 14, 2003, p. 26.
Appellants filed a timely appeal to this Court. This Court remanded the matter to the Zoning Board with instructions to decide the Appellants' application for the special use permits. The Zoning Board considered the matter on October 28, 2003, and on November 25, 2003, rendered a decision denying, again on a three to two vote, the special use permits. The written decision contained the exact same rationales as the written decision denying the development plan appeal.
 STANDARD OF REVIEW
This Court's review of the Zoning Board's decision is governed by G.L. 1956 § 45-24-69(D) which provides that:
 "[the] court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the Appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 1. In violation of constitutional, statutory, or ordinance provisions;
 2. In excess of the authority granted to the zoning board of review by statute or ordinance;
 3. Made upon unlawful procedure;
 4. Affected by other error of law;
 5. Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 6. Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." G.L. 1956 § 45-24-69(D).
When reviewing a zoning board decision, the court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v. Zoning Board ofReview of Newport, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v.Zoning Board of Warwick, 122 R.I. 241, 245; 405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi,120 R.I. 501, 508; 388 A.2d 821, 824-25(1978)). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Ass'n v.George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v.International Ass'n of Firefighers, AFL-CIO, Local 1589, 119 R.I. 506, 508; 380 A.2d 521, 522 (1977)). This Court should exercise restraint in substituting its judgment for the Zoning Board and is compelled to uphold the Zoning Board's decision if the Court conscientiously finds that the decision is supported by substantial evidence contained in the record.Mendonsa v. Corey, 495 A.2d 257, 260 (R.I. 1985) (citing Apostolou v.Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
The Appellants aver that the Zoning Board made its decisions denying their appeal from the Planning Commission's decision and denying their application for two special use permits based on a record devoid of compelling evidence that the project would alter the general character of the area, create traffic congestion, and create a traffic hazard. The Zoning Board responds that they adequately stated their reasons for determining that the proposed project would alter the general character of the area, create traffic congestion, and create a traffic hazard.
The Rhode Island Supreme Court has held that while traffic congestion is germane as to whether or not a proposed use would adversely affect the public convenience and welfare, the evidence must relate to whether the traffic generated by the proposed use will intensify the congestion or create a hazard. Bonitati Bros. v. Zoning Board of Woonsocket,104 R.I. 170, 171, 242 A.2d 692, 693 (1968). Moreover, an increase in traffic, even if it did occur, does not necessarily adversely affect the public convenience and welfare. A mere increase in traffic at the site of a proposed use is not a valid zoning criterion when neither a consequent intensification of traffic congestion nor hazard at the location accompanies it. Toohey v. Kilday, 415 A.2d 732, 737 (R.I. 1980).
Expert testimony before the board plays an important part at zoning hearings. Generally, expert testimony is required during the course of a zoning board hearing to provide information about matters that are central to the board's decision. However, in considering a zoning case before it, "a board may consider probative factors within its knowledge . . . or may acquire adequate knowledge through observation and inspection on a view." Toohey, 415 A.2d at 737. This personal knowledge and inspection is considered competent, reliable evidence only if the Board discloses its reliance on this information on the record of the hearing. Id. at 737-738. The Zoning Board also must state for the record the factual findings it has made upon completing the inspection, and the court will not presume that a board reached a decision pursuant to knowledge acquired by it through an inspection of the property under consideration. Kelly v. Zoning Board of Review, 94 R.I. 298, 303-304,180 A.2d 319, 304 (1962).
In Toohey, the court upheld the trial justice's finding that the zoning review board improperly denied a special use permit due to inadequate evidence in the record. 415 A.2d at 737. In Toohey, the zoning board heard testimony from the applicant and from a real estate expert that the petition would not be detrimental to the surrounding properties and that the proposed use would not be adverse to the public health, safety, morals, or welfare. Id. at 736. The board also heard from several neighboring property owners who spoke against the granting of the petition. The board, stating that it was "well familiar with the area in question and knows of its character," denied the special exception. Id.
While recognizing that a zoning board may consider probative factors within its knowledge in denying relief, the court found that conclusory statements, such as those given by the board in Toohey, were an insufficient basis to deny a special use permit. Id. at 737.
Additionally, the Rhode Island Supreme Court has consistently stated that "[a] zoning board should state the reasons or grounds on which it bases its ultimate decision, and not mere conclusions and generalities. . . ." Health Havens, Inc. v. Zoning Bd. of Review, 101 R.I. 258, 261,221 A.2d 794, 797 (1966); Irish Partnership v. Rommel, 518 A.2d 356, 358-359 (R.I. 1986); see also von Bernuth v. Zoning Board of Review ofthe Town of New Shoreham, 770 A.2d 396, 402 (R.I. 2001) ("Decisions [should] . . . address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting [variance] relief, as set forth in § 45-24-41 (c) and (d).").
During the hearing, two Zoning Board members did state that they were familiar with the area and that they believed the proposed development would cause traffic congestion and traffic hazard. However, both members failed to support their statements with anything resembling facts or to explain how the Appellants' proposal would alter the character of the area, create traffic congestion, or traffic hazards. Additionally, the third member did not disclose any basis for his familiarity with the area or any facts upon which he based his decision. These are exactly the kind of conclusory statements that our Supreme Court has rejected as not being substantial evidence sufficient to support a zoning board decision. SeeToohey, and Bonitati, supra.
This court determines, after review of the entire record, whether the evidence upon which the Board's decision was based "has probative force due to its competency and legality." Salve Regina College v. Zoning Boardof Review of the City of Newport, 594 A.2d 878, 880 (R.I. 1991). Furthermore, a zoning board is not obliged to accept the testimony of an expert if there is evidence of record that controverts the expert's opinion. See Restivo v. Lynch, 707 A.2d 663, 671 (R.I. 1998). However, where the zoning board had no other expert testimony or evidence in the record adverse to the Appellants upon which it could base its findings and conclusions save for the above Zoning Board members' conclusions and generalizations which are completely lacking in probative force, that decision cannot be sustained. See Salve Regina College, 594 A.2d at 882.
To obtain a special use permit or development plan approval, the applicant has the burden of presenting competent evidence to establish entitlement to relief under the conditions of the ordinance. See Section 21-15(a) and Section 21-284(b)(2) of the Town of North Kingstown Zoning Ordinance. Where the conditions and requirements for such requests as set forth in a zoning ordinance are satisfied, it is an abuse of discretion for a zoning board to deny the requested relief. Salve Regina, 594 A.2d at 882.
CONCLUSION
In light of the competent evidence adduced before the Zoning Board, the Zoning Board's denial of the Appellants' request for development plan approval and special use permits for the construction of a Dunkin Donuts shop with a drive up window and a separate stand-alone Washington Trust Company drive-up automatic teller machine constituted an abuse of discretion by the Zoning Board and its findings were clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. The decision of the Zoning Board is reversed.
Counsel may submit an appropriate order.
[1] Section 21-284(b)(2) of the Town of North Kingstown Zoning Ordinance sets out the criteria for development plan approval. In granting development plan approval, the planning commission shall require evidence to the satisfaction of the following standards be entered into the record of the proceedings:
a. That the requested action will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based;
b. That the grant of the approval will not pose a threat to the drinking water supply;
c. That the use will not disrupt the neighborhood or the privacy of abutting landowners by noise, light, glare or air pollutants;
d. That sewage and waste disposal into the ground and the surface water drainage from the proposed use will be handled on site;
e. That the traffic generated by the proposed use will not cause congestion or introduce a traffic hazard to the circulation pattern of the area;
f. That accessory signs, off-street parking and loading area and outdoor light are designed and located in a manner which complements the character of the neighborhood.
[2] Section 21-15(a) of the Town of North Kingstown Zoning Ordinance sets out the criteria for the granting of special use permits and special permits. In granting a special use permit or special permit, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) The requested special use permit will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based;
 (2) That the special use permit is reasonably necessary to serve the public convenience and welfare;
 (3) That the granting of a special use permit will not pose a threat to the drinking water supply;
 (4) That the use will not disrupt the neighborhood or the privacy of abutting landowners by excessive noise, light, glare or air pollutants;
 (5) That sewage and waste disposal into the ground and the surface water drainage from the proposed use will be adequately handled on site;
 (6) The traffic generated by the proposed use will not cause undue congestion or introduce a traffic hazard to the circulation pattern of the area;
 (7) That accessory signs, off-street parking and loading area and outdoor lighting are designed and located in a manner which complements the character of the neighborhood.
 (8) In addition to the above criteria, in the case of a special permit, the board shall require evidence that the requested use will have a lesser undesirable impact upon the surrounding area than the preceding nonconforming use.
[3] Curb cuts have been designed to deter left hand turns into and out of the site. Additionally, signage indicates the prohibited turns.
[4] Thus, traffic traveling west on Ten Rod Road would be allowed to make a right hand turn into the site. Traffic traveling east on Ten Rod Road would access the site through the traffic signal and through the adjacent shopping center. Traffic leaving the site and heading west on Ten Rod Road would be allowed to make a right hand turn exiting the site onto Ten Rod Road. Traffic leaving the site and heading east on Ten Rod Road would exit the site though the traffic signal and would be prohibited by the curb design from making a left hand turn from the site.
[5] Mr. Clinton's traffic analysis took into account projected future traffic count increases over a five-year period.
[6] To support the queuing analysis, Mr. Clinton described his study of the traffic counts at a Citizens Bank drive-up ATM — a bank with a larger customer base than Washington Trust. Based upon this study, the maximum number of cars found at the Citizens Bank ATM during peak periods was three. As a result, the ATM on the subject property was designed with queuing spaces for five vehicles. See Transcript, December 10, 2002, p. 51-52, 84-85).
[7] Mr. Desmond further indicated that he was not sure if the Appellants could do anything to prevent people making illegal turns. Mr. Desmond commented that you "can't make highways safe for idiots," Transcript, December 10, 2002, p. 91, and speculated that people making illegal traffic maneuvers create a traffic hazard on any site. Transcript, December 10, 2002, p. 96. He also indicated that he would have designed the curb cuts the same way. Transcript, December 10, 2002, p. 93.
[8] The Zoning Board declined to rule on the applications for the Special Use Permits.